Whitaker, Judge,
delivered the opinion of the court:
On September 7, 1932, plaintiff entered into a contract with the defendant for the erection of what was denominated the Male Receiving Building at St. Elizabeths Hospital, Washington, D. C.
In this suit plaintiff seeks to recover: (1) the sum of $21,482.00, the cost of structural concrete and reinforcing steel which it alleges it was required to use in addition to that required by the contract, as amended by change order No. 1; (2) the sum of $11,227.69 which it alleges was the amount of damages suffered by it on account of delays caused by the defendant; and (3) for the sum of $1,225.00, liquidated damages deducted at the time of final settlement.

Cost of additional structural concrete and reinforcing steel

On the day following the signing of the contract plaintiff suggested a change in the plans for the building which would eliminate many of the columns in the corridors and in the dining room of the-building. This was to be done by the use of a two-way joist system, instead of the one-way system prescribed by the contract.
The defendant was unfamiliar with the two-way joist system but was interested in eliminating the columns and agreed to discuss the proposed change with plaintiff. These discussions resulted in the issuance of a change order on October 11,. 1932, which was accepted by plaintiff, providing for the elimination of “certain columns to be designated when and if the contractor submits acceptable plans.and methods to accomplish' the desired result.” It was stipulated in this change order that “the additional cost, if any, [was] not to exceed $8,600.00.”
Plaintiff proceeded to prepare proposed plans. A number of conferences were had between the parties which finally-resulted in the approval on November 29, 1932 of the plans, submitted by the plaintiff. In plaintiff’s letter transmitting-these plans it said: *111 It was a provision of Change Order No. 1 that the additional cost was not to exceed $8,600.00. This amount has been paid the plaintiff.
*110 We will greatly appreciate anything you can do to* expedite formal approval of these drawings in accordance with the provisions of Change Order No. 1.
*111 That plaintiff well understood that the amount to be paid it for this work was not to exceed $8,600 is shown by its letter of December 15, 1932, in which it requested, “that the cost incident to Change No. 1 be fixed at Eighty-six Hundred Dollars ($8,600.00).”
Again on January 3, 1933 it wrote the contracting officer itemizing the cost going to make up the $8,600; and finally on January 11, 1933, the contracting officer wrote plaintiff, “you are advised the additional cost that you estimate of $8,600.00 for this additional work and materials to be placed is approved.”
It is true that the plaintiff estimated that 5,692 cubic yards of reinforced concrete and 499.3 tons of reinforcing steel would be necessary to do the work, and that actually 5,752 cubic yards of reinforced concrete were actually used, but there is no showing that anything more was required of the plaintiff than was called for by Change Order No. 1, as supplemented by the plans drawn by the plaintiff and approved by the defendant.
Evidently plaintiff did not think that anything more was being required of it, because while the work was going on it made no such claim, it made no request for additional compensation, nor for any order in writing to do the additional work, which it was required by the contract to make if it was to claim additional compensation for doing any extra work. Plumley v. United States, 226 U. S. 545; Griffiths v. United States. 74 C. Cls. 245. It made no claim for extra compensation on this account until July 10, 1934, about two weeks before the entire building was completed.
We are clearly of the opinion that the plaintiff is not entitled to recover on this item.

Damages due to delays alleged to ha/oe been ccmsed by the defendant

The contracting officer allowed plaintiff an extension of time of 123 days on account of delays which he held were *112 caused by the defendant. Plaintiff claims damages for these delays.
The first item is a delay of 52 days alleged to have been caused by the defendant in failing to approve promptly the plans for a redesign of the building to eliminate certain columns, discussed above.
As stated,' plaintiff had suggested this change in the plans. This suggestion was approved by the defendant, subject to working out satisfactory plans. These plans were to be prepared by the plaintiff. It originally prepared the plans in its Chicago office and mailed them to^ Saint Elizabeths Hospital. Saint Elizabeths Hospital had secured the services of the Veterans’ Administration to prepare the plans and otherwise assist it in the construction of this building. It referred plaintiff’s plans to them for checking and approval. Correspondence back and forth ensued; but plaintiff and defendant soon found that the matter could not be handled at long distance, and plaintiff’s representatives came from Chicago to Washington to go over the plans in person wdth defendant’s engineers. A room in the Veterans’ Administration building was put at their disposal and lengthy conferences between plaintiff and defendant were held daily. The proof shows that the matter was handled expeditiously by both parties. The commissioner has so found, and plaintiff has taken no exception to this finding. The testimony leaves no room for doubt that this is so.
Defendant’s representative who was immediately in charge of checking these plans was a man by the name of Kafter, who had been borrowed by the Veterans’ Administration from the Bureau of Yards and Docks for this purpose. He testified time and again that he and his associates did everything they could to expedite the work. He says they worked overtime practically every day, that they worked nights, that they worked on Thanksgiving day, Sundays, and Saturday afternoons.
Sholtes, who was the architectural engineer for Saint Elizabeths Hospital in charge of the architectural work, says there, was no delay whatever, but that everyone did all they could to expedite getting out the plans.
*113 Kelly, who was the superintendent of construction at Saint Elizabeths Hospital, testified:
The matter was handled with unusual expediency [sic] because the Hospital was just as anxious to go ahead with the revision on a full-speed basis as the contractor could have been.
Sanger, the contracting officer, says that he gave the matter his personal attention so that it could be expedited. He said that it was he who suggested to plaintiff’s representatives that they would make available to them a room at the Veterans’ Administration where their representatives could work in close conjunction with representatives of the Government, in order that the matter might be expedited.
The plaintiff offers no testimony to refute this but relies alone upon the finding of the head of the department that the delay of 52 days “resulted from acts of the Government.” Its position is that this finding of the head of the department is final and conclusive, and entitles it to damages. A reading of the testimony leaves no doubt in our minds that this finding is grossly erroneous, if it be construed to mean unwarranted acts of the Government. There is nothing in the testimony that supports it. When the claim was first made, the head of the department denied it; a rehearing was requested, and he again denied it; but for some reason — what, we do not know — he finally granted it after a further rehearing. In his original finding he did not hold that the delay was caused by the Government.
In a sense, of course, the delay was caused by the Government, in that it was occasioned by the checking of the plans by the Government before final approval, but the evidence does not justify a finding that the delay due to checking and final approval of the plans was due to defendant’s failure to proceed with reasonable diligence. The testimony shows, on the other hand, that the defendant’s representatives exercised great diligence in assisting plaintiff to work out plans that could be approved. If the finding of the contracting officer is to be construed as holding that there was unreasonable delay on the part of the Government in finally approving these plans, it must be set aside as being grossly erroneous. There is no evidence to support it.
*114 The contract gave the defendant the right to make changes; this change, indeed, was suggested by the plaintiff; the additional amount to be paid on account of it was agreed upon. Unless, therefore, the defendant unreasonably delayed approving these plans, there can be no recovery of damages on account of the change. Griffiths v. United States, 74 C. Cls. 245, 254. The plaintiff is not entitled to recover damages on account of this 52. days’ delay.
The second item of delay alleged to have been caused by the defendant is one óf eight days, during which time the plaintiff alleges it was prevented from pouring footings.
Plaintiff was required to excavate for the footings. When it started to poiir the concrete for them the inspector on the job stopped the pouring of nine of them because he was uncertain from the appearance of the ground whether or not it would bear the load to be placed upon it. He proceeded at once to make the necessary load testsi These tests are made by placing an appropriate amount of weight on one or two square feet of ground and watching the amount of settlement over an appropriate period of time.
Eight days was required by the defendant to make these tests. There is no proof in the record that this was an unreasonable length of time. What proof there is shows ' that this was not an unreasonable time.
The defendant, of course, had the right to test the load-bearing capacity of the ground after the plaintiff had excavated, and it had the right to stop the pouring of the concrete until these tests could be made. It was its duty, of course, to make the -tests as promptly as practicable, but if it did this, no right of -plaintiff’s has been violated. Certainly it was not the duty of the defendant to permit the plaintiff to pour the "concrete if it had reason to believe that the ground woiild not support the weight to be placed upon it.
It is true that the Contracting officer allowed an extension of time for the performance of the contract of eight days-on account of the stoppage in the pouring of the footings; but he has not found that this stoppage was unjustified or that the plaintiff was delayed more than a reasonable time within which to make the necessary tests. The mere fact. *115 that an extension of time was granted on-account, of some act of the defendant is not sufficient to entitle plaintiff to-recover damages for the delay caused thereby.' It-can only recover for an unjustifiable delay caused by the. defendant.. If the defendant was justified in stopping the. work, then of course the-plaintiff is not entitled to recover. The-proof does not show that the defendant' was nob justified in stopping the" pouring of the concrete on these footings.'
The third item of delay for which damages are claimed, 'is said to have been caused by defendant’s failure promptly to -change the specifications for a relocation of the louver and window openings in the penthouse.
During the construction of the building it was discovered that if built in accordance with the contract'drawings the sloped roof would interfere with the penthouse louver and window openings. The contractor notified the contracting officer thereof, and an amendment of the drawings; was requested. These were issued the next day. A change-order was issued and accepted by the plaintiff providing for extra compensation on account of the change of $72.24, and. for an extension of time of one day. This change order constituted a modification of the contract. Under the original contract, as modified by this change order, the plaintiff' agreed to do the work for the original contract price plus the $72.24 specified in the change order. This amount has been paid and, therefore, plaintiff is clearly not entitled- to any further sum. Griffiths v. United States, supra; Seeds & Derhan v. United States, 92 C. Cls. 97, certiorari denied, 312 U. S. 697.
The fact that the head of the department later ruled that plaintiff was entitled to an additional day’s extension of Time - on account of this change does not alter the case. Plaintiff had originally asked for an extension of time of three days on account of this change, but under the change order only one day was allowed. Later, the head of the-department ruled that plaintiff was entitled to an additional day. He might very well have held the plaintiff to its contract as set out in the change order, but he generously allowed an additional day; -but he has not found any fact to show that the Government did not act promptly in mak *116 ing the change, or otherwise unreasonably delayed plaintiff. The amount specified in the change order was in full of all compensation to which plaintiff is entitled on account of this change. It is the amount the parties agreed upon and plaintiff is not entitled to recover more.
The nest item is for a delay of 57 days in finally approving the linoleum to be laid. The specifications with respect thereto provided in part that it should comply with the requirements of the standard Government specifications. These provided, “the color and finish shall match a sample mutually agreed upon by the buyer and seller.” The plaintiff submitted to the contracting officer a sample on August 4, which the contracting officer approved on August 14. When the plaintiff began laying the linoleum the defendant, upon examination, ruled that it was not up to the sample approved and that it did not comply with the specifications, for the principal reason that it had not been treated so as to protect and seal the surface from penetration of greases, liquids, etc., and because ink, ammonia, and weak acids could not be removed therefrom without spotting.
The plaintiff exerted every effort to secure a reversal of this ruling, but the contracting officer refused to do so until February 2, 1934. He then permitted it to be laid, but only on the condition that it would be treated so that spots would not be left on it by the removal of ink and other substances which might fall on it. In his letter to the plaintiff of that date he reiterated his original position that the linoleum which plaintiff planned to lay differed from the sample originally submitted and approved because, among other things, ink, ammonia, and weak acids could not be removed therefrom without spotting it; but, he said, that inasmuch as that condition could be remedied by buffing the material and bringing it to a high polish after it had been laid, he would approve it, upon condition that it be buffed, and upon certain other conditions not here material. He also said in his letter that he was willing to approve it because, first, it complied with the general specifications for linoleum, as distinguished from the specifications for this particular job, and, second, because the building was so far behind in its scheduled time for completion and because the need for the building was so great.
*117 The conditions laid down by the contracting officer were finally met by the plaintiff and the linoleum was laid.
We think the contracting officer was well within his rights in rejecting the linoleum plaintiff proposed to install. It failed to comply with the specifications for this particular job. Those specifications provided that the linoleum to be laid should not only conform to the general Government specifications for linoleum applicable to all jobs (Federal Specification Board Specification No. 209), but it went further than these general specifications and required, in addition, that it should “be specially treated by the manufacturer with a thin, clear lacquer preparation or other approved durable finish processed into the goods or applied during manufacture of the linoleum which shall protect the linoleum and seal dirt-absorbing pores of the material to prevent the penetration of greases, liquids, etc., and which shall furnish a surface from which ink, ammonia, weak acids, etc., may be easily removed without leaving spots or stains * * The proof shows that the linoleum which the plaintiff proposed to install had not been treated so as to permit the removal therefrom of ink, etc., without leaving spots. This was an adequate reason for its rejection. There- is no proof in the record that this finding of fact by the contracting officer was not correct.
It is true the head of the department later held:
* * * A careful analysis by the Bureau of Standards of the linoleum being laid by the contractor showed that all samples taken from the linoleum being laid were equal to the requirements of the specification but were not equal to the sample originally submitted.
The head of the department then proceeded to hold that the contractor’s duty was fulfilled when it furnished linoleum equivalent to the specifications and that it could not be required to go further and furnish material which was equal to the samples submitted. For this reason he held that the contractor was delayed by the defendant 57 days in the completion of its contract.
It will be noted that 'the head of the department makes no finding as to whether or not the finish of the linoleum to be furnished would permit the removal of ink, etc., without spotting. The finding of the contracting officer that it would *118 not permit the removal of ink without spotting has not been overruled, and so far as we have been able to ascertain has not been contradicted by .the proof. If this be a fact, then the linoleum which the contractor proposed to lay did not comply with the specifications applicable to this particular job, although it may have complied with Standard Specification No. 209, because these specifications have nothing to :say about a surface from which ink, etc., could be .removed without spotting. When the head of the department found that the linoleum to be installed was equal to the' requirements' of the specifications he undoubtedly had in mind the-general specifications applicable to all jobs and did not have in mind the fuller specifications applicable to this particular job.
The ruling of the head of the department on whether or not the. contracting officer was within his rights in rejecting the linoleum is a mixed question of law and fact. 'Under article 15 of the contract his decisions are conclusive, in . cérr tain cases only on questions of fact, and not upon all questions. The contract does'not make his decision on questions of law final and conclusive. Whether or not the defendant,' through; its contracting officer, violated plaintiff’s rights in’ rejecting this linoleum is a question of law.
The head of the department has held as a fact that 'the linoleum did comply with the specifications, but did not ■comply with the sample submitted. Then, having-made .these findings of fact, the head of the department concludes: :
* * * It is evident thát the contractor' would be required to .supply linoleum equivalent only to'that required by the specifications and that the contracting officer was in error when he determined that the -material must meet the qualifications of the samples sub-, mitted by the contractor at the time its bid was. made.
Whether or not the contracting officer was in error is a question of law, and the ruling thereon of the head of the department is not conclusive on us.
We do not think he was in error. The defendant’s general specifications for linoleum, with which the linoleum for this job was required to comply, provided that “the color and finish shall match a sample mutually agreed upon *119 by the buyer and seller.” The head of the department has held as a fact that the proposed linoleum “were [sic] not equal to the sample orginally submitted.” This being the fact — and no one disputes it — the contracting officer was not in error in rejecting it. He had a right to insist that it “match a sample mutually agreed upon.” It was not equal to the sample agreed upon in that, among other things, ink and other stains could not be removed therefrom without spotting. Nor, for this same reason, did it comply with the specifications applicable to this particular job.
The fact that nearly a year later the head of the department in considering plaintiff’s claim for an extension of time ruled that the linoleum complied with the specifications, however construed, cannot be treated as; a reversal of the finding of fact of the contracting officer with respect to the removal of ink spots, because it was not made on appeal from this finding of fact; nor does the head of the department mention this particular finding, but merely holds generally that the material did comply with the specifications. This general finding is inconsistent with his finding that it was not equivalent to the sample. The specifications required that it should be. They required, too, 'that it should be treated so that ink spots could be- removed without spotting. The proposed .linoleum differed from the sample, among other tilings,. in that ink spots could be removed from the sample without spotting, but could not' be from the linoleum the plaintiff proposed to use.
We think the contracting officer was within his rights in rejecting this linoleum, and, therefore, the defendant is not liable for damages for the resulting delay. '
The plaintiff’s next claim for damages is for defendant’s alleged delay in approving the lathing material.
The original design of the building called for the use of 34-inch channel irons in connection with the lathing. When the two-way joist system was substituted for the one-way system, these channel irons were eliminated, but nevertheless the contracting officer insisted that the contractor use these channel irons, and upon the contractor’s insistence that they were not called for by the contract, the contracting officer stopped the lathing until the dispute could be settled.
*120 Lathing was stopped on August 16, 1933, but not until August 29, 1933 did the contracting officer finally settle the question. He settled it by requiring the contractor to use the channel irons. This ruling was admittedly erroneous, and the contractor has been paid $3,340.09 as additional compensation on account of this requirement. The contracting officer should have ruled more promptly on the dispute. The head of the department has ruled that by his delay in finally deciding the question he delayed the contractor five days in the completion of the work, and the contractor now sues for damages incident to this delay. We- think it is entitled to recover therefor. The question should have been decided one way or the other within a few days. Instead, the contracting officer took 13 days to finally decide it.
The proof shows that the plaintiff’s overhead was $69.25 per day. The contractor asks, in addition, the rental value of its equipment, but the proof fails to show to what extent, if any, its equipment was idle while this dispute was being settled.
On the proof it is entitled to recover-only its overhead for these five days of delay. On this item the plaintiff is entitled to recover the sum of $346.25.
In addition to the 123 days, of delay which the contracting officer held was caused -by the defendant, the plaintiff asks damages for nine days in addition. Eight days’ delay it claims was caused ' by defendant’s delay in deciding whether or not to change the plastering material.
• The plaintiff is clearly not entitled to recover damages on this account. Plaintiff itself proposed that the plastering material should be changed. The defendant did nothing more than give consideration to plaintiff’s proposal. It did not order plaintiff not to do any plastering until it had decided this question. It was perfectly willing to go ahead with the plaster originally specified, and finally ordered the plaintiff to do so. Any delay in the matter was a delay caused by the plaintiff, for which, of course, it is not entitled to recover.
Plaintiff also asks damages for one day’s delay alleged to have been caused by the defendant in stopping the laying of terrazzo. The defendant stopped it because it was not *121 satisfied with the grouting upon which the terrazzo was to be laid. The contractor insisted that the grouting was as it should be, and convinced defendant that it was. The laying of terrazzo was resumed the next day. The contract gave the defendant the right to' make inspection -and to stop the work if the material was not satisfactory. There was no showing that the inspector acted capriciously or without reasonable cause to believe that the grouting was not satisfactory. It was the inspector’s duty to prevent the laying of terrazzo unless the grouting was up to specifications. As soon as he was convinced that' it was, he permitted it to proceed. Plaintiff is not entitled' to recover on this item....
In'addition to the foregoing matters, the plaintiff claims it was delayed' four days due to the failure of the defendant to furnish adequate' temporary' heat. This delay it says ran concurrently with the nine days’ delay discussed above, but, inasmuch as- we have held.that plaintiff was not entitled to recover for these nine days, it is necessary to consider whether or not it is entitled to recover damages for the four days’ delay caused by the inadequacy of the heat supplied.
Paragraph G-33 of the specifications reads:
The temporary heat may be obtained by connecting the radiators for the buildings to the present lines of the heating system at the hospital at such points as designated by the superintendent. All connections shall be made by the contractor at his own expense, but the necessary steam for heat will be furnished by the Government after the building is fully inclosed, at no expense to the contractor.
It is clear from this.provision of the specifications that the extent of the duty of defendant was to furnish the steam. Getting the steam from the boiler into the radiators was the job of the plaintiff. The specifications expressly provide that “all connections shall be made by the contractor at his own expense.”
Although the defendant was not obligated to do so, it nevertheless ran a line from the heating plant to the new building, with which line the contractor connected. This *122 was a two-incli main; it proved inadequate to supply the necessary heat. When the defendant stopped the work because of the inadequacy of the heat, the contractor finally asked permission to be allowed to install a six-inch main. Instead of allowing the contractor to do this, the defendant did it itself, and thereafter no further trouble was experienced.
It is no doubt true that the- two-inch main was responsible for the inadequacy of the heat, but the furnishing of this main was a gratuitous act on- the part of the defendant. It was not obliged to furnish any main, nor was the contractor obligated to connect with the main furnished if it did not think it was adequate. When it did connect with it, it took the risk of its being adequate. Certainly it cannot hold the defendant responsible for having done an act for its benefit not required under the contract, and of which the contractor took advantage.
The plaintiff is not entitled to recover on this item.

Liquidated damages deducted

Finally the contractor sues to recover $1,225.00 liquidated damages deducted by the Comptroller General.
The contracting officer allowed total extensions of time of 299 days. The contract was completed 214 days after the original completion date, leaving 25 days’ additional time within which plaintiff could have completed the contract without penalty. The Comptroller General, however, deducted from the extensions of time granted by the contracting officer a total of 32 days, reducing the extensions to 267 days, and assessed against the contractor liquidated damages for the difference between 267 days and 274 days.
The contract provides that the contracting officer, and not the Comptroller General, “shall ascertain the facts and the extent of the delay,” and it makes his findings of fact thereon “final and conclusive on the parties hereto, subject only to appeal, within thirty days, by the contractor to the head of the department concerned, whose decision on such appeal as to the facts of delay shall be final and conclusive on the parties hereto.”
*123 It is, therefore, the action of the head of the department that is before us for review. On the question now before us that action is binding on us unless we find that it was arbitrary or grossly erroneous. In no event are we bound under this contract by the action of the Comptroller General.
It appears that the head of the department was quite generous in his allowance of extensions of time, especially in his allowance of an additional 52 days for delay incident to the change of the design of the building, and of 51 days’ delay in connection with the linoleum dispute. He might very well have disallowed both requests for extension, but we are unwilling to say that his action in granting them was arbitrary or grossly erroneous.
It is true that we have held that his decision that the .defendant had caused the .52 days’ delay incident to the redesign of the building was erroneous; but we cannot say that there was not in fact such a delay, irrespective of who caused it.
. It is true that an extension of time of 60 days was originally granted in connection, with change order No. 1, and that the 52 days is in addition thereto, and that final plans for the change in design were approved earlier even than the 60 days; but there is no finding on whether this original 60 days was granted on account of the delay in working out the plans for the change, or whether it was granted because it would take 60 days longer to construct a building under the new design than under the old.' For what reason the original 60 days’ extension was granted on account of this change is not shown.
The findings of the contracting officer are entitled to. every reasonable presumption. It is not unreasonable to suppose that this 60 days’ extension was granted because it would take that much longer to construct the building under the new design than under the old, and that the additional 52 days’ delay was granted because of the delay in the final approval of the new design.
There was a delay in connection with final approval of the linoleum. We have held the plaintiff is not entitled to damages on account of this delay; but we have not held and *124 do not now bold that there was not such a delay; nor that equitably the plaintiff was not entitled to an extension of time on account thereof.
' The evidence is not sufficient to justify us in setting aside the findings of the contracting officer on the extent of the delays. The action of the Comptroller General in deducting 32 days from the total extension granted by the head of the department must be set aside. Karno-Smith Co. v. United States, 84 C. Cls. 110, 124; S. M. Siesel Co. v. United States, 90 C. Cls. 582, 599.
• The plaintiff is entitled to recover on this item $1,225.00.
' On the' whole case the plaintiff is entitled to recover $1,571.25, for which judgment will be entered. It is so 'ordered. .
Madden, Judge;, Jones, Judge;. Littleton, Judge; and .Whaley, Chief Justice, concur.