PFOTZER et al. v. UNITED STATES.
No. 46075.

Court of Claims.
May 3, 1948.

As Amended May 25, 1948.

John W. Gaskins, of Washington, D. C. (King & King, of Washington, D. C., on the brief), for plaintiffs.

Gaines v. Palmes, of Washington, D. C., and John F. Sonnett, Asst. Atty. Gen., for defendant.

Before JONES, Chief Justice, and LITTLETON, HOWELL, MADDEN, and WHITAKER, Judges.

LITTLETON, Judge.

The plaintiff partnership, E. & E. J. Pfotzer, seeks to recover a total of $23,746 on seven separate alleged causes of action under a unit price and lump sum construction contract with defendant.

Prior to May 7, 1942, the Government, through the U.S. Engineer Office, Corps of Engineers, U.S. Army, Mobile, Alabama, prepared detailed specifications, schedules and drawings for additional housing, technical, and hospital construction, including utilities, at Brookley Field, Mobile Air Depot Groups, at Mobile, Alabama. In addition, the district engineer prepared the "Standard Government Form of Bid" for construction, which was designated "Invitation No. 569–42–590."

This invitation and bid form, on which bids were to be made, was issued May 7, 1942, and the bids were to be filed with the district engineer by May 12, 1942. Notice that such bids would soon be called for had been mailed to prospective bidders, including plaintiff, early in April 1942, and they were then advised where they could obtain or examine the specifications and drawings.

Plaintiff's bid was accepted and the standard form of Government contract for construction (U. S. Standard Form No. 23), dated May 16, 1942, was executed by the parties. The contract price on the basis of the estimated quantities was $1,275,584. The contracting officer was Major C. S. Kuna, who was the executive officer in the U. S. Engineer Office at Mobile. He designated the area engineer, who was the officer in immediate charge of the work, as his authorized representative in the field and the district engineer as his authorized representative in the U. S. Engineer Office.

The pertinent provisions of the Invitation and Bid Form, herein referred to as the "Bid Form," as filled in by defendant and plaintiff, are set out in finding 2. Plaintiff's bid provided, in part, that "In compliance with your invitation for bids * * * and subject to all the conditions thereof, the undersigned * * * hereby proposes to furnish all labor and materials and perform all work required for the construction of * * * in strict accordance with the specifications, the schedules included, and the drawings mentioned therein, for the consideration of the following prices." Following this was a tabulated "Schedule of Bid Items" in which the Government had designated and described the various items of work, the estimated quantities and the unit of measurement on which bids were to be made. Included, also, in this "Schedule of Bid Items" was a number of provisions which were designated as "NOTES."

The first six of the seven items of plaintiff's claim relate to the basis on which plaintiff should be paid for certain items of work and involve interpretations of Article 1 of the contract, the provisions of certain bid items and certain provisions in the specifications. The material facts with reference to the first five items of the claim are not in dispute. The seventh item of the claim involves the question whether plaintiff incurred additional expense in connection with a change in the drawings, which required plaintiff's foremen and carpenters to read them in reverse order and perform certain work "opposite hand" and, if so, the amount of such increased cost. The first six items of the bid (of which Items 4 and 5 were Alternate No. 1, and Item 6 was Alternate No. 2) were strictly unit price items, and Items 7 to 37, inclusive, were lump sum price items for each of 121 buildings, 2 automobile wash racks and 2 booster pumps therefor, and 515 linear feet of walks. Unit price Alternate No. 2, Item 6, was accepted, and the language of that bid item under "Designation" gives rise to the controversy with respect to the first item of plaintiff's claim.

Item 1. Claim for $9,369.30 for Concrete Floor Slabs on Elevated Wood Subfloors

The facts with reference to this claim are set forth in findings 6, 7, and 8. Bid Item 6 was as follows:

| Item No. | Estim. Quan. | Unit | Designation | Unit price | Amount |
|---|---|---|---|---|---|
| 6 | 4,018 | Cu. yd. ... | Alternate No. 2: (Formed concrete foundation—*no blocks*). *Concrete*, including reinforcement for *all* piers, foundation walls, bases under all piers and foundation walls, and for floor slabs. (Cement will be furnished by the U. S. Government.) | $30 | $120,540 |

As shown in finding 2, the unit price items, of which the above item was the last, were followed by a "Note" and following the note were listed the various buildings and structures to be constructed, which were designated on the bid form as "Structures." This note was as follows:

NOTE.—Unit price for each of the buildings listed hereinafter shall include all work, materials, labor, and incidentals required to construct them complete with utilities to a point five (5) feet outside the building except for clearing and grubbing, excavation, gravel fill under floor slabs, concrete and reinforcing steel in piers, footings, foundation walls or floor slabs on earth or gravel. Concrete floor slabs including reinforcement not on earth or gravel shall be included in the lump-sum price bid for each building.

As shown in finding 3, in which Article 1 of the formal contract as executed is set out, and in findings 4 and 5, only the "Schedule of Bid Items" of the Bid Form was copied and attached to the contract as document No. 1, along with the drawings and the specifications, as revised by addenda.

As required by the drawings, plaintiff produced and placed 312.31 cubic yards of reinforced concrete for elevated floor slabs on wood subfloors in portions of the first floor of certain buildings, and claimed pay-

ment therefor as "concrete for floor slabs" under unit price Item 6, at $30 a cubic yard, in addition to the lump sum contract price for each of the buildings in which such floor slabs were placed. These were the only floor slabs which were not on earth or gravel. There was no dispute as to any facts.

The contracting officer and the head of the department interpreted the contract as providing that this item of concrete work was to be included in and compensated for by payment of the lump sum price bid for each building, and denied plaintiff's claim for payment under unit price Item 6. This claim did not involve a dispute concerning a question of fact, as contemplated by Article 15 of the contract.

Plaintiff says these decisions were erroneous. We cannot agree, for several reasons.

Plaintiff contends that the Bid Form was not a part of the standard form of contract and that the defendant, when it came to prepare the formal contract on Standard Form 23, expressly eliminated therefrom, by Article 1, all parts or portions of the Bid Form, including Alternate 1, Items 4 and 5, and the "Note", by making only the "Schedule of Bid Items" a part of the contract as document No. 1. Plaintiff insists that it included this concrete in its bid Item 6 and did not include it in its bid prices for each of the buildings; that the contract, as executed by the parties, did not provide or intend that these floor slabs were to be included in and paid for by the lump sum price; that unit price bid Item 6, Alternate No. 2, plainly provided a price of $30 a

cubic yard for "concrete * * * for floor slabs" without qualification, and that defendant, in an attempt to justify its denial of the claim, varied and contradicted the terms of the contract by referring to and basing its decision on the "Note", hereinabove quoted, in the Bid Form.

We thus have presented two questions. First, was the Bid Form a part of the contract? Second, if not, what did the parties intend by the words "concrete * * * for floor slabs," as used in unit price Item 6? As a part of the second question, we have a third question, which is: May the provisions of the Bid Form, other than those set out in each of the bid items, be considered in ascertaining what the parties intended by the language used in the "Schedule of Bid Items," as well as the meaning of certain language used in certain paragraphs of the specifications.

The printed portion of Article 1 of the standard form of contract, which plaintiff agreed to execute, made the specifications a part thereof and these, as revised by addenda, were listed by defendant in Article 1, before the formal contract was executed. In addition, a copy of the "Schedule of Bid Items (without the 'Note')" was listed.

It seems clear that the Invitation and Bid Form was made a part of the Specifications by paragraph 1–02, Section I, General Provisions, and Addendum No. 3. Paragraph 1–02, provided:

1–02. Work to be Done.—The .work to be performed under this contract consists of furnishing all material and equipment (except that furnished by the United States), all fuel, and labor and performing all work required to construct additional housing, * * * in accordance with the drawings and these specifications, and as listed in the Bid Form. The specifications which are applicable to this work are as follows:

Contract Specifications

1. "Invitation, General Provisions, Materials and Equipment and Bid Form".
* * *
Addendum No. 3 to the specifications, issued with the Invitation and Bid

Form on May 7, 1942, added a subtitle designated "Part I" to Section I, General Provisions, which read: "Part I, Invitation, General Provisions, Materials and Equipment, and Bid Form Specifications." The various provisions of the Bid Form were not set out in full in the Specifications but this was not necessary since the Bid Form had to be filled out, signed, and filed by plaintiff, and, when so executed and filed, neither party could alter or vary any of its terms and conditions. R.S. § 3709, 41 U.S. C.A. § 5; G. Schwartz and Co. v. United States, 89 Ct.Cl. 82, 91.

Since the Bid Form was a part of the Specifications and, therefore, a part of the Contract, it is clear that plaintiff is not entitled to recover on this claim. The parties expressly stipulated that concrete floor slabs not on earth or gravel would be included in the lump sum price bid for each building.

Even if the Bid Form had not been expressly made a part of the Specifications, we could look to its provisions for the purpose of ascertaining the intention of the Contract and the sense in which the parties used the term "concrete floor slabs" in bid Item No. 6. Schwartz v. United States, supra; Salmon Falls Mfg. Co. v. Goddard, 14 How. 446, 460, 55 U.S. 446, 14 L.Ed. 493; Reed v. Insurance Co., 95 U.S. 23, 30, 31, 24 L.Ed. 348; Kauffman v. Raeder, 8 Cir., 108 F. 171, 175, 54 L.R.A. 247; A. L. I. Restatement of the Law of Contracts, secs. 227, 230, and 242; Catalano v. Bopst, 166 Md. 91, 170 A. 562, 567.

Item 2. Claim for $3,217.80 for Formed Concrete Beams

The contract and drawings, 800–1166 and 800–1168, with reference to the foundations for buildings, called for reinforced concrete footings, 12″ by 12″ concrete piers (at least 18″ above grade), certain concrete walls under certain buildings, of the same height as piers, and certain reinforced concrete beams on top of the 12″ x 12″ piers, extending around the perimeter of the kitchen section of each mess building where concrete floor slabs were called for and where such building did not have concrete

foundation walls. The sole purpose of these concrete beams was to support the concrete floor slabs and the heavy kitchen equipment. The floor slabs were poured on wood subfloors of sheathing laid on wood sills installed over the area encircled by the concrete beams and which were anchored to such beams. These beams were formed and poured with the floor slabs, but there was nothing in the contract that required plaintiff to employ this method of construction. Such beams could as well have been poured separately or with the foundation piers.

Plaintiff produced and placed 107.26 cubic yards of concrete in constructing these reinforced beams and made claim for payment therefor at $30 a cubic yard under the provisions of unit price Item 6, Alternate 2. The claim was denied by the contracting officer and the head of the department, on the ground that the contract required that these beams be included in the lump sum price for the buildings in connection with which they were constructed. No facts were in dispute, and the claim did not involve a question of fact within the meaning of Article 15 of the contract.

In making its bid plaintiff included these beams in unit price Item 6, and did not include their cost in the lump sum bid price for the building.

We think plaintiff's interpretation of the Bid Form, the drawings, and specifications was reasonable, and that the decisions denying the claim were not supported by any facts or by the language or the intent of the contract. The only provision in the Bid Form, which was prepared by defendant, with reference to concrete was in unit price bid Item 6, which was entitled "Formed concrete foundations." While concrete beams, as such, were not specifically mentioned in bid Item 6, there was no other provision in the Bid Form or the Specifications which covered them and they were shown on the drawings relating to foundations and the details thereof. We think, therefore, that these beams were included and intended to be so included in unit price bid Item 6. This view is strongly supported by the fact that all concrete work called for by the contract was included in bid Item 6, except elevated floor slabs not on earth or gravel, which slabs would also have been included in bid Item 6 if defendant had not inserted in the Bid Form an express provision (quoted under the preceding claim) that such floor slabs "shall be included in the lump sum price for each building." From this we must conclude that if it had been intended that the concrete beams were also to be included in the price for the buildings rather than in the only bid item relating to concrete (Item 6), they would have been mentioned in the "Note" along with the concrete slabs. These beams served the same purpose as "foundation walls" mentioned in bid Item 6, and they were required only where foundation walls were not specified in the foundation drawings. We think under all the circumstances that the beams fairly come within the term "Formed concrete foundations" or the term "Foundation walls." In reality the beams were as much a part of the concrete foundation piers as were the foundation walls. The contracting officer and the head of the department said that foundations customarily terminate at the top of the piers and they therefore considered the concrete beams to be a part of the superstructure. But this is not a hard and fast rule and it cannot be regarded as controlling where, as here, the only provision with reference to such beams was in the unit price item. Certainly there is nothing in the rule that would prevent the parties to a contract from including the concrete for such beams in a unit price item for concrete rather than a lump sum price for the superstructure. Here the language of the contract, as well as the evidence of intention, fairly shows that the reinforced concrete beams in question come under unit price Item 6. As we have said, plaintiff's interpretation of the Bid Form and the drawings was reasonable, and any doubt as to whether, under the terms of the contract, the work falls under Item 6, or the lump sum items, should be resolved in favor of plaintiff since the defendant prepared the Schedule of Bid Items and the Bid Form.

Plaintiff is entitled to recover $3,217.80 on this claim.

### Item 3. Claim for $2,018 for Excavation and Concrete Floor Slabs for Wash Racks

Bid Item 33, under "Structures," called for "Wash Rack, Mod (25' x 60') (5-Car) (Excluding Booster Pump and Connections)," and two wash racks were indicated under "Estimated Quantity." The Booster Pumps were Item 34. These wash racks were shown on drawing 700–348 (not in evidence). They were not mentioned in the specifications. There was no provision in the contract documents that these wash racks were to be "paid for complete, complete in place, ready for use." (See General Note 1, in the Bid Form, finding 2.) The "Note" in the Bid Form which followed the unit price items and preceded the listed "Structures," provided that the unit price for each of the "buildings," which included structures, thereinafter listed would not include, among other things, "excavation, gravel fill under floor slabs, concrete floor slabs on earth or gravel." "Excavation for buildings foundations, footings, and floor slabs" was included in unit price Item 2; "gravel fill under floor slabs" was included in unit price Item 3; and "concrete for floor slabs" was included in unit price Item 6.

Plaintiff sublet part of the work for the wash racks and booster pumps to its plumbing subcontractor. On the basis of this sub-bid and the cost of such work as plaintiff would perform, exclusive of excavation and concrete floor slabs, plaintiff bid $1,200 for each wash rack. Plaintiff performed 109 cubic yards of excavation for the installation of the two wash racks, and claimed payment therefor at $2 a cubic yard, or $218, under unit price Item 2. Plaintiff also produced and placed 60 cubic yards of reinforced concrete floor slabs for the two wash racks and claimed payment therefor at $30 a cubic yard, or $1,800, under unit price Item 6. Gravel fill under the floor slabs was used as an extra and that item was paid for under unit price Item 3 at $5 a cubic yard.

These claims were denied by the contracting officer, whose decision was affirmed on appeal, on the ground that "It is the interpretation of this office that the wash racks are to be paid for at the unit price stated under Item No. 33, complete in place."

█ In view of the provisions of the contract documents above referred to and the evidence submitted, we think the defendant's interpretation of bid Item 33 was clearly erroneous. Plaintiff has shown what costs entered into its bid price of $1,200 for each wash rack, and also that the cost of excavation and concrete was not included therein.

Plaintiff is entitled to recover $2,018 on this claim.

### Item 4. Claim for $850 for One Booster Pump

█ The facts with reference to this claim are set forth in findings 18 to 23, inclusive. The designation of bid Item 34 was "Booster Pump and Connections for Wash Rack." This was the only item in the Bid Form with respect to which defendant failed to state the "Quantity," and in view of the language of the "designation" this would indicate one pump. However, Section VIII of the Specifications called for a booster pump at each wash rack, and paragraph 8–11 provided that "Payment shall be made at the contract unit price bid for 'Booster Pump and Connections for Wash Rack' which price and payment shall constitute full compensation for furnishing, placing, testing, and all incidentals necessary to complete the item. Under this item shall be included all piping and connections to a point 5 ft. from booster pump on intake side." Other paragraphs specified other things to be furnished and installed in connection with and in addition to the pumps.

Plaintiff bid a "unit price" of $850, in the fifth column of the Bid Form, for one pump complete with housing, wiring, connections, etc., on the basis of the work it would do and on the bid of its subcontractor who was to furnish the pumps and plumbing. Plaintiff inadvertently and unintentionally entered the amount of its bid price for one pump of $850 in the total column of the Bid Form, instead of entering therein $1,700 as the total for the two pumps complete in place.

Because plaintiff had entered the figure of $850 in the total column, defendant refused to pay plaintiff on any other basis. This action was not supported by facts and was clearly contrary to the provisions of paragraphs 8–11, supra, and also Note 3 of the General Notes in the Bid Form, which stated that "* * * In case of variation between unit bid price and totals shown by bidder, the unit price will be considered to be his bid." Defendant ignored this provision. Plaintiff's error was caused by defendant's failure to indicate the quantity.

On the facts and under the terms of the contract plaintiff is entitled to recover $850 on this claim.

Item 5. Claim for $3,326 for Certain Material used for Space Grading under Buildings

This claim involves the question whether plaintiff is entitled to be paid twice for 1,-163 cubic yards of material, first, under Item 2, as excavation for foundations and, second, under Item 1, as material used for the purpose of grading under buildings. Bid Items Nos. 1 and 2, as set forth in the Bid Form, are as follows:

1–01. Scope.—The work includes the furnishing of all labor, materials and equipment required to perform all necessary clearing, excavating, filling, backfilling and grading required for construction of the buildings, (and for the construction of all utilities within and to a point 5'–0" beyond building lines), in accordance with the drawings, and subject to requirements hereinafter specified. * * *

1–09. Grading.—All excavated materials lying above finished grade shown on drawings shall be spread so that none of it remains above finished grade lines. Where finished grades under buildings are not clearly shown, grading under, and for distance of ten (10) feet outside buildings shall be such as will provide positive drainage without ditching. Where excavated material is in excess of that required for back-filling and grading, surplus material shall be removed and deposited as directed by the Contracting Officer.

1–10. Disposal of Excavated Material.—Materials classified as earth shall be used for backfilling and such rough grading as is required on the site. Any excess material shall be placed where directed by the

| Item No. | Estim. Quan. | Unit | Designation | Unit price | Amount |
|---|---|---|---|---|---|
| | | | BUILDINGS | | |
| | | | General | | |
| 1 | 7,902 | Cu. Yd.... | Excavation, unclassified (space grading), including overhaul, if any, and clearing and grubbing within building sites, but not including excavation for roads, footings, or items for which excavation is included in the unit price. | $2.00 | $15,804.00 |
| 2 | 4,905 | Cu. yd. ... | Excavation for building foundations, footings and floor slabs (other than space grading indicated above). | 2.00 | 9,810.00 |

The applicable provisions of the Specifications, Part II, Section I—Excavating, Filling and Grading for Buildings, provide, in part, as follows:

Contracting Officer. The furnishing of rough exterior grading material, other than that resulting from his work, will not be required of the Contractor. In case

excavated material is insufficient or not considered by the Contracting Officer to be of proper quality for fill under floor slabs the Contractor shall furnish and place approved material for the purpose.

1–11. Measurement for Payment.—(a) Excavation, space grading.—Material paid for under this heading shall include all material removed as ordered or specified other than as described below, measured in its original position, based on cross sections taken before and after the work is performed. This shall include the excavation below grade of unsuitable material, where ordered removed in writing by the Contracting Officer.

(b) Excavation for footings shall include all excavation required for footings, foundation walls, slabs on earth, utilities, or borrow for fill under slabs. Material paid for under this heading shall be paid for based on the dimensions stated in paragraph 1–03 above, except for borrow required for fill under slabs. Payment for borrow required for fill under slabs will be made only in its original position. No double payment shall be made by reason of use of excavated material removed and paid for under "Excavation, space grading", or "Excavation, for footings", which may be available for use as fill under slabs. However, material required and directed by the Contracting Officer to be borrowed for fill under slabs, other than excavation required for space grading or for footing excavation, shall be paid for at the unit price bid for "Excavation, for footings".

(c) Backfilling.—No additional payment shall be made for earth used for backfilling of trenches or about foundation walls or footings. Replacement of unsuitable material below grade ordered to be removed, shall be paid for only if it shall become necessary to borrow additional material, as directed by the Contracting Officer, for that purpose. In that case payment will be made at the unit price bid for "Excavation for footings", and shall be measured in its original position.

1–12. Basis of Payment.—The yardage of excavation measured as provided above shall be paid for at the contract unit price per cubic yard under the items "Excavation, space grading," or "Excavation,

for footings" in the bid form, as the case may be, which unit price shall be payment in full for all equipment, tools, labor and incidentals necessary to complete the work. Payment for clearing of building sites shall be included in the unit prices bid for "Excavation, space grading", and/or "Excavation, for footings".

As shown in findings 26, 27, and 28, this amount of 1,163 cubic yards of material was used in connection with the work of grading under Group 5 buildings and, as was agreed at the time and as alleged in the petition, consisted of material left over from excavation for foundations and it had been paid for at $2 a cubic yard under bid Item 2. The amount of 4,621.5 cubic yards was used in connection with this grading work but only 2,742.2 cubic yards thereof represented original excavation for this grading work. (See finding 26.)

Plaintiff claimed payment at $2 a cubic yard under Item 1, for the entire amount of 4,621.5 cubic yards, and defendant paid it at that price under Item 1 for only 2,742.2. This action was based on the decision of the contracting officer, which was affirmed on appeal, that plaintiff was not entitled to be paid twice for excavated material and that under the terms of bid Item 1 and the applicable specifications, material for grading under and around buildings (known as space grading) was to be paid for as "excavation" removed, as specified, "measured in its original position."

■ We think these decisions correctly interpreted the provisions of bid Item 1 and the specifications. Plaintiff argues, however, that all material used for "space grading," whether as excavation or fill, was to be paid for under bid Item 1, even though such material was to be or had been paid for as excavation under bid Item 2. This contention cannot be sustained. Bid Item 1 relates to "Excavation, unclassified," and so do paragraphs 1–11, "Measurement for Payment," and 1–12, "Basis of Payment." Paragraph 1–09 requires that all "excavated material" shall be spread so that none of it remains above finished grade and that "excavated material," in excess of that required for "back-filling and grading," shall be disposed of as directed by the

contracting officer. It seems clear that these provisions, considered together, require that any surplus excavated material once paid for, shall, if suitable, be used, among other purposes, for space grading without additional payment.

Plaintiff is not, therefore, entitled to recover on this claim.

## Item 6. Claim for $1,500 for Space Grading in Area Ten Feet Adjacent to Buildings

■ This claim also arises under bid Item 1. The quoted specifications and our discussion thereof are applicable here. Plaintiff made claim for payment at $2 a cubic yard under bid Item 1, for 750 cubic yards of "space grading" adjacent to certain buildings prior to October 29, 1942, when defendant took over this work. The claim was denied on the ground that no work was performed in this area for which plaintiff was entitled to payment under the contract. · The proof here is not sufficient to show that the findings and decisions of the area engineer and the contracting officer, which were approved on appeal, were erroneous. On the contrary, we are compelled to reach the same conclusion on the evidence submitted. Plaintiff. shows only that some earth was moved by a bulldozer and pushed up near the foundation piers of some of the buildings. Whether this was original excavation or consisted of excavated material already paid for does not appear. In addition, the proof is not sufficient to support a finding that 750 cubic yards, or any other amount of work, was performed in this area.

Plaintiff is not entitled to recover on this claim.

## Item 7. Claim for $4,464.90 for Increased Costs Resulting from Opposite Hand Construction

This claim involves a question of fact, namely, whether plaintiff sustained increased costs, and, if so, the amount thereof.

About the time plaintiff commenced performance of the work defendant decided to make a change in the drawings for certain buildings by changing the location of the toilet room in each of 27 buildings so as to place it nearer to the sanitary lines. It was not necessary under this change to prepare new floor plan drawings but the change made it necessary for plaintiff to perform this portion of the work in reverse of the manner shown on the drawings, in other words, to perform it "opposite hand." It is not difficult for foremen or carpenters to read plans in reverse in performing such work.

Plaintiff claimed that this change would increase its costs for the buildings involved by $4,464.90, which was based on its estimate of from $25 to $155 per building, and asked for a change order increasing the contract price by that amount. The request was denied. After the work had been completed plaintiff renewed its request and submitted its claim for payment of $4,464.-90. The claim was denied by the contracting officer and the head of the department on the ground that no extra costs had been incurred, and they made findings to that effect.

■ Neither party kept a record as to increased costs as the work progressed. Plaintiff says it was impossible to do so. Plaintiff's claim is based entirely on the assumption that the necessity of reading plans in reverse and performing work opposite hand naturally has the effect of increasing costs by at least 20 percent of the labor costs applicable to each building. E. J. Pfotzer testified that in his opinion 20 percent was a fair estimate. On the record, we cannot agree. The facts do not support the opinion that this is a fair and reasonable estimate of the amount of actual increased costs occasioned by mistakes, delay, or additional materials. We, therefore, have no proper basis for a finding that increased costs were in fact incurred. Defendant's inspector observed the work as it was being performed and his conclusion, as well as that of the area engineer, was that no actual increased costs were incurred. Plaintiff's estimate was a guess, and we are not convinced from the record that the opinion of one of the partners that the estimate of $4,464.90 was reasonable, is sufficiently supported in fact to war-

rant its acceptance as adequate proof on which to base a finding. The Conqueror, 166 U.S. 110, 127–133, 17 S.Ct. 510, 41 L.Ed. 937. (See findings 36 and 37.) The proof, therefore, does not overcome the administrative findings and decisions.

Plaintiff is not entitled to recover on this claim.

A few words should be said with reference to the argument of defendant that the decisions of the contracting officer and the Board of Contract Appeals, acting for the Secretary of War, were final and conclusive as to all the claims involved, under Article 15 and paragraph 1–07 of the Specifications, Section I, Part I, General Provisions, etc.

We do not agree. Article 15 of the standard contract form, entitled "Disputes," provided in part: Except as otherwise specifically provided in this contract, all disputes concerning questions of fact arising under this contract shall be decided by the contracting officer subject to written appeal * * * to the head of the department * * * whose decision shall be final and conclusive upon the parties thereto. In the meantime the contractor shall diligently proceed with the work as directed.

Under this article the finality of decision was clearly limited to questions of fact or factual issues. There was no other provision in the standard contract which "otherwise specifically provided." But defendant argues that paragraph 1–07, supra, was a provision "in this contract" which "otherwise specifically provided." Paragraph 1–07 read: 1–07. Interpretation of Contract: Unless otherwise specifically set forth, the Contractor shall furnish all materials, plant, supplies, equipment, labor, etc., necessary to complete the work according to the true intent and meaning of the drawings and specifications, of which intent and meaning the Contracting Officer shall be the interpreter. Except when otherwise indicated, no local terms or classifications will be considered in the interpretation of the contract or the specifications forming a part thereof.

It is true that the specifications were, by Article 1, of the printed standard form

of contract, made a part thereof, but the specifications and drawings were made a part of the contract for the purpose of detailing the work to be performed and the materials to be furnished, and we think this is evidence against rather than in favor of defendant's contention. If it had been intended that a provision in a specification should override an article in the formal contract, we think such intention would have been expressed, or that the specifications would have been mentioned in Article 15. Where Article 15 mentions "this contract," it means the "Standard Form 23" and not the specifications. Otherwise all the labor and study that entered into the formulation, preparation and adoption of the standard form of Government contract by the Departmental Board of Contract and Adjustment for approval by the President, would have been left to the whim of the specification writer. See Harwood-Nebel Construction Co. v. United States 105 Ct.Cl. 116.

The court will take notice, from the many cases brought here, of the fact that the Standard Form of Construction Contract, Form 23, was first adopted and approved by the President in 1926, and that form contained Article 15, as it is written into the present contract, Form 23. Article 15 states a rule of policy. It is only under Article 22, that the Government, acting through the contracting agency or the head of the department, may, as a matter of policy, add additional articles as "Alterations." Without any other aid than the standard contract form itself, we think it is manifest that the Government intended that the provisions of the standard form, and the policies stated therein, would be paramount to the specifications and would govern in case of inconsistency or conflict. Loftis v. United States, Ct.Cl., 76 F.Supp. 816. But we are not compelled to rely upon this general rule of implied intention. The view is supported by the express provisions of the standard printed "Directions for Preparation of Contract" which were formulated and issued with the original standard contract forms. The present contract is "Form 23, Revised, Approved by the Secretary of the Treasury, September 14,

1940." On the back of the last page thereof is printed the "Directions for Preparation of Contract," paragraphs 1, 2, 3, and 15, of which are as follows:

1. This form shall be used for every formal contract for the construction or repair of public buildings or works, but its use will not be required in foreign countries.

2. There shall be no deviation from this standard contract form, except as provided for in these directions, and except as authorized by the Director of Procurement. Where interlineations, deletions, additions, or other alterations are permitted, specific notation of the same shall be entered in the blank space following the article entitled "Alterations" before signing. This article is not to be construed as general authority to deviate from the standard form. * * *

3. The blank space of article 1 is intended for the insertion of a statement of the work to be done, together with place of performance, or for the enumeration of papers which contain the necessary data.

\* \* \* \* \* \*

15. Additional contract provisions and instructions, deemed necessary for the particular work, not inconsistent with the standard forms nor involving questions of policy, may be incorporated in the specifications or other accompanying papers.

From the foregoing it is clear that the interpretation referred· to in paragraph 1–07 of the specifications only related and was intended to relate, as its provisions show, to the furnishing by the contractor of materials, plants, supplies, equipment, labor, etc., necessary to complete the work in accordance with the drawings and specifications. This had to do with the performance of the work in an accurate and speedy manner and was for the purpose of putting the contractor on notice that he would be required to perform the work and diligently proceed therewith according to the directions of the Government's contracting officer and not according to his own views about what might be necessary under the plans and specifications. The contractor might dispute the directions of the contracting officer but he had to proceed with the work and obey the contracting officer's directions concerning performance, based upon his interpretation or opinion as to "the true intent and meaning of the drawings and specifications." The ultimate settlement and decision of disputes arising under the contract was another matter which was to be governed by Article 15. Under this article, as we have held, the conclusive nature of the decisions on claims was limited to disputes "concerning questions of fact," as distinguished from questions involving interpretations or the law of the contract, as those terms are usually and generally construed and applied by the courts. Williston on Contracts, Vol. 3, ¶ 616; Albina Marine Iron Works v. United States, 79 Ct.Cl. 714, 722; Callahan Construction Co. v. United States, 91 Ct.Cl. 538, 616; Schmoll v. United States, 91 Ct.Cl. 1, 33; John K. Ruff v. United States, 96 Ct.Cl. 148, 165; B–W Construction Co. v. United States, 97 Ct. Cl. 92, 118; John McShain, Inc. v. United States, 97 Ct.Cl. 281, 295.

Paragraph 1–07 obviously had nothing to do with claims, protests, disputes and appeals, with reference to amounts due. It did not purport to make final and conclusive the contracting officer's interpretation of the plans and specifications with reference to these matters. Its purpose was to keep the work going without interruption and to avoid disputes as far as possible.

Plaintiffs are entitled to recover $6,085.-80, and judgment will be entered for that amount. It is so ordered.

JONES, Chief Justice, and HOWELL, MADDEN and WHITAKER, Judges, concur.