Madden, Judge,
delivered the opinion of the court:
The plaintiff claims that the Government assessed more liquidated damages against the plaintiff than were properly assessable, and sues to recover that excess.
On J anuary 3, 1935, the plaintiff, in response to an invitation for bids, submitted a bid for furnishing 360,000 pairs of cotton drawers or shorts to the War Department. As required by the invitation, the plaintiff stated in its bid the rate at which it would bind itself to make delivery of the shorts, if it should receive a contract. It set that rate as 35 percent of the total number within 30 days “after receipt of notification of award” and W/2 percent each 7 days thereafter.
On January 5 the Government telegraphed the plaintiff that it had been awarded the contract, and on the same day it wrote the plaintiff a letter stating that the contract would be dated J anuary 8, and that the schedule of delivery which the plaintiff had promised in its bid would be measured from that date. The effect of this statement was to give the plaintiff three more days within which to perform the contract. This modification, to the plaintiff’s advantage, of the term of its offer relating to delivery did not affect the validity of the Government’s acceptance of the offer. At any rate, the plaintiff, on January 7, acknowledged, with thanks, the receipt of the order contained in the letter, and showed by that and other conduct that it was contracting on the basis of the letter.
The plaintiff was late in its deliveries. By February 8, the date set in the Government’s letter for the delivery of 35 percent of the entire order, no shorts at all had been delivered. And deliveries after that time and within the agreed period did not make up the deficits. The only reasons appearing in the evidence for the delinquency were that the plaintiff had difficulty in making satisfactory arrangements with manufacturers for the manufacture of the shorts which it had promised, and was obliged to find manufacturers different, to a large extent, from those to whom it had intended, when *804 it made its bid, to give the orders; and that the samples which it was obliged by its contract to submit to the Government for approval before quantity production would begin, were submitted late and were, in most instances, rejected by the Government when first submitted.
The Government’s letter of January 5, referred to above, and quoted in finding 4 said :
This is your authority to proceed with the work pending the execution of formal contract papers which will be forwarded to you for signature as soon as they can be prepared.
The formal contract was sent January 24. It was dated January 8, as the letter had said it would be. It said “Contract period January 8, 1985-March 16, 1935.” The plaintiff signed the contract on January 29 and returned it to the Government. It was signed by the Government February 8, and one signed copy was sent to the plaintiff on February 12. The plaintiff urges that the agreed time for performance did not begin to run until February 8, when the Government signed the contract. If the plaintiff is right, the amount of liquidated damages should have been $6,910.53 less than was assessed, and this is one item of the plaintiff’s claim in this suit. The rate of liquidated damages provided in Article 15 of the contract, as shown in finding 6, was one-fifth of one percent of the price of each unit for each day’s delay.
We do not agree with the plaintiff’s contention. The correspondence by which the parties reached their agreement made it perfectly plain that deliveries were to be made by specified dates after January 8. The formal contract, when the plaintiff signed it on January 29, said the same thing in plain words. It is not possible to urge that the parties intended anything different. And we know of no doctrine whereby we may reform the contract to give it a meaning which the parties did not think it had. There is no equity in the plaintiff’s position which would make a rewriting of the contract desirable. The delay in the preparation and execution of the formal contract had nothing whatever to do with the delay in the delivery of the goods. To hold that this irrelevant circumstance should have the effect of partially abrogating the agreement would serve no just purpose.
*805 The plaintiff was warned in the invitation for bids, as shown in finding 2, not to make promises as to delivery dates unless it was positive it could perform them. It seems to have made its promise in disregard of this warning, and thus put itself in its present predicament.
The other count in the plaintiff’s claim arises out of the fact that the Government, on April 4, 1935, terminated the plaintiff’s contract as to 124,430 pairs of shorts. By April 4, which was about 20 days after the whole .order of 360,000 pairs should have been delivered, the plaintiff had in fact delivered 108,401 pairs. Its manufacturers had in process of manufacture, or they or the plaintiff had had the cloth cut, for some 130,000 more. The number as to which the contract was terminated was the number not delivered and not in process of manufacture. These 130,000 pairs as to which the contract was not terminated were finally delivered by the plaintiff, the last of them on December 9, nine months after they were due. Those late deliveries account for a considerable assessment of liquidated damages, as to which the plaintiff does not complain.
The Government obtained the 124,430 pairs as to which it terminated the plaintiff’s contract by entering into contracts with other manufacturers, each dated April 8, four days after it terminated the plaintiff’s contract. The prices paid were substantially the same as those in the plaintiff’s contract. These manufacturers delivered the shorts within their contract periods, the last of them being delivered July 29, which was some five months before the plaintiff completed delivery upon the part of the contract retained by it. Article 15 of the contract, quoted in finding 6, provided that if the plaintiff did not make delivery within the agreed time, the Government might terminate the contract and purchase the shorts in the open market, or secure the manufacture of them by contract or otherwise,
charging against the contractor and his sureties any excess cost occasioned the Government thereby, together with liquidated damages accruing until such time as the Government may reasonably procure similar material or supplies elsewhere: * * *
The liquidated damages assessed against the plaintiff included a sum computed upon the lateness of delivery, with *806 reference to the delivery dates promised in the plaintiff’s contract, of the shorts obtained under the relet contracts. The plaintiff sues also for that sum, urging that the provision in the contract for liquidated damages should be strictly construed ; that the text of the contract quoted above would have permitted the Government to terminate the contract completely, secure all of the shorts elsewhere, and charge the plaintiff with liquidated damages until they had been secured ; but that since the Government permitted the plaintiff to continue with the deliveries of the 130,000 pairs which were in process at the time of termination, it had no right to charge liquidated damages at all for the late deliveries under the relet contracts. The construction urged would be not only strict, it would be destructive, without reason, of the purpose of the provision in the contract. The Government was just as much inconvenienced by late deliveries from the manufacturers to which the contracts were relet, as to the numbers of pairs of shorts obtained from them, as it would have been by late deliveries by the plaintiff. We see no reason why it should not have contracted, as it did, for some compensation for that inconvenience, nor why we should search for an escape from the effect of that contract. It was considerate of the Government to permit the plaintiff to go on and complete the shorts which were in process, and the plaintiff expressed no disagreement to the partial termination. We think this part of the liquidated damages was properly assessed.
The plaintiff’s petition will be dismissed. It is so ordered.
Whitaker, Judge; Littleton, Judge; and Whaley, Chief Justice, concur.
Jones, Judge, took no part in the decision of this case.