## TOBIN v. UNITED STATES.

No. 45705.

Court of Claims.

April 2, 1945.

Errett G. Smith, of Washington, D. C., for plaintiff.

Donald B. MacGuineas, of Washington, D.C., and Francis M. Shea, Asst. Atty. Gen., for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

MADDEN, Judge.

The plaintiff sues to recover liquidated damages assessed against him and withheld

by the Government from payments which would otherwise have been due him. He made a contract with the Government to take aerial photographs of the land in three counties, in Georgia, and to furnish contact prints, enlargements, photo-index maps, and negatives of these photographs, for the use of the Agricultural Adjustment Administration. The contract was a standard form Government supply contract which included the invitation to bid, the bid, the acceptance, the continuation schedule and the aerial photography specifications.

To perform the contract, the contractor had to provide the necessary airplanes and aerial cameras and take photographs of the land in each county. He would then develop the film and print "contact prints" from his negatives; arrange those prints so that an assembly of them would cover a given area of the land; photograph the assemblies of the prints to a smaller scale to make "photo-index maps"; submit the contact prints and photo-index maps to the Government for approval or for partial rejection which would require re-flying and re-photographing of some of the land, and the preparation of better photo-index maps; after approval, prepare enlargements of the maps on the basis of "ratio factors" to be furnished by the Government.

A pertinent part of the continuation schedule is quoted in finding 2. It says that "Contact prints and photo-index maps for each county project shall be shipped to the (specified office of the Government) within fifteen (15) calendar days after the date final flying is completed on said county unit."

The plaintiff did not ship these prints and maps until some four months after he had completed his original flying of each of the three counties. Liquidated damages at $10 a day for each county, the rate provided in the contract, if applicable, were assessed, which consumed nearly all that the plaintiff earned under the contract.

We have no doubt that the language of the contract quoted above obligated the plaintiff to develop his films, make his contact prints and photo-index maps of each county and ship them to the Government within fifteen days after he completed, to his own satisfaction, his flying and photographing of the land in that county. The plaintiff urges that because the words "final flying" are used, the sentence means rather that he must ship the prints and maps within fifteen days after he completes any further flying which might be required if the Government should reject as unsatisfactory the prints and maps which he submitted to them for approval or rejection. This is an impossible construction, since it would impose no duty on him to ship the materials until after he had shipped them and they had been inspected and approved or rejected. In short, it would mean that he was under no duty to ship them at all. The words "final flying" are not, in the context and circumstances, so clear and unambiguous that they compel an interpretation so destructive of an important part of the contract.

The plaintiff points us to paragraph 32 of the specifications which provides for liquidated damages of $10 a day for delay in "delivery after expiration of the time allowance specified in paragraphs 26(a) and 27 hereof, and in the schedule of the advertisement * * *." All these provisions of the specifications are printed in finding 2. The fact that paragraph 32 speaks of "delivery" while the continuation schedule which was a part of the advertisement speaks of shipment, would not in itself trouble us. Shipment would amount to delivery if the contract said so, and if we found that the language of paragraph 32 was otherwise applicable, we would apply it.

But the plaintiff urges, and we agree, though with some doubt, that paragraph 32 is not otherwise applicable to delay in shipping prints and maps as required by the first sentence in the first paragraph of the part of the continuation schedule quoted in finding 2. Paragraph 32 provides for liquidated damages for "delay in undertaking the work and in delivery after expiration of the time allowance specified in paragraphs 26(a) and 27 hereof, and in the schedule of the advertisement * * *" as follows:

Undertaking the work............... $10
Contact prints with index maps...... 10
Oblique photographs ................ 10
Ratioed prints ..................... 10
General enlargements ............... 10

We look to paragraph 26(a) of the specifications. It applies plainly to "undertaking the work", and refers to the advertisement. We look to paragraph 27, and its lettered subdivisions. Subdivision (a) is a substantial duplicate of the *second* sentence of the first quoted paragraph of the continuation schedule, except that it fixes the number of days merely by reference to the

schedule. It clearly applies to the "final delivery" of the prints and maps after they have been submitted for approval, approved and returned to the contractor for enlargement. This sentence refers expressly to paragraph 27(a) and, as we have said, 27(a) in substance duplicates the sentence. Paragraph 27(b), referred to in paragraph 32, clearly covers the same ground as the second quoted paragraph of the continuation schedule. It has to do with the delivery of enlargements. So we find that the references in paragraph 32 to "time allowances specified in paragraphs 26(a) and 27 hereof and in the schedule of the advertisement" are completely fulfilled by time schedules set in the continuation schedule *and* in the specifications. Paragraphs 26(a) and 27 say nothing about late delivery of original flying prints and maps. The omission is pointed, because the continuation schedule expressly refers, at the end of the second quoted sentence, and of the second paragraph, to the corresponding provisions of section 27, while at the end of the first sentence, the one here applicable, there is no such reference. The result is that the Government, either purposely or inadvertently, did not make the liquidated damages provision applicable to late shipment of the original prints. We would probably so conclude, as a matter of purely objective interpretation of language. If we give any heed at all to the idea that provisions for liquidated damages should be narrowly construed, we should hold, as we do, that there was no agreement for liquidated damages in the situation which occurred.

The Government urges that the negative provisions of paragraph 27(d) (see finding 2) should create an implication that the liquidated damages provision covers the instant situation. The argument is that since 27(d) expressly provides that there should not be liquidated damages for the time between dates of delivery and dates of acceptance or rejection of, inter alia, contact prints with index maps, it implies that there may be liquidated damages before such delivery. There is some basis for such an implication, but it is by no means clear, since 27(d) expressly limits its operation to situations coming "under the foregoing specifications." The delay with which we are concerned in this suit occurred at a stage not adverted to at all in the specifications but only in the continuation schedule. We ought not to base a provision for liquidated damages upon an implication, unless the implication is plain.

The express mention of "contact prints with index maps" as the subject of liquidated damages in paragraph 32 is fulfilled by their express mention, in the connection discussed above and not applicable to our facts, in the second sentence of the continuation schedule and in 27(a) of the specifications.

The plaintiff may recover $3,575.40. It is so ordered.

WHALEY, Chief Justice, and WHITAKER and LITTLETON, Judges, concur.

JONES, Judge, took no part in the decision of this case.