**AMERICAN TRANSFORMER CO. v. UNITED STATES.**

No. 45882.

Court of Claims.

Dec. 3, 1945.

Prentice E. Edrington, of Washington, D. C., for plaintiff.

William A. Stern, II, of Washington, D. C., and Francis M. Shea, Asst. Atty. Gen., for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and · MADDEN, Judges.

JONES, Judge.

The plaintiff, a New Jersey corporation, having its principal office and plant in Newark, New Jersey, has for several years been engaged in the manufacture of electrical power transformers and rectifiers and other electrical equipment.

On March 3, 1940, it entered into a written contract with the defendant to furnish certain electrical equipment to the Bonneville Power Administration, an office of the Department of the Interior, located at Portland, Oregon, which serves users of electrical power in the Pacific Northwest by selling electrical energy generated at Bonneville and Grand Coulee Dams, such energy being conveyed through its own transmission lines and substations. ·

Plaintiff agreed to furnish and deliver three 10,000-KVA electrical transformers and bushings f.o.b. Newark, New Jersey, certain transformer oil, f.o.b. Whiting, Indiana, and spare parts, f.o.b. Barberton, Ohio. It also agreed to furnish the services of an engineer to install the transformers at the defendant's Salem, Oregon, substation, where they would be used in a bank to replace three 2,500-KVA transformers. Transportation cost was to be borne by the defendant.

Notice of award was received by plaintiff on April 29, 1940, and the date of delivery was to be not later than September 26, 1940. Liquidated damages for delay in delivery were to be assessed at the rate of $100 per day.

Final delivery was not made until April 12, 1941, 198 calendar days after the delivery date specified. Plaintiff was granted an extension of 77 calendar days by the contracting officer, but was assessed a penalty for 121 calendar days, or a total of $12,100. The head of the department on appeal granted an additional 30 calendar days extension, but retained the assessment for 91 days, a total of $9,100, and withheld payment of this amount in the settlement of the contract. For this $9,100 plaintiff sues.

■ Plaintiff claims the remission of an additional 13 days' liquidated damages on account of the alleged failure of defendant to promptly reply to a letter which plaintiff wrote to the Bonneville Power Administration on May 8, 1940, and which is set out in finding 6. This letter undertakes to reduce to writing, after a conversation with some of the engineers of Bonneville Power Administration, plaintiff's understanding of what would be required. It also undertakes to set out some of the details of the manufacture of the transformers. This letter was not promptly answered, and on May 22, 1940, plaintiff wrote another note asking for an acknowledgment of its previous letter. Upon receipt of the second letter the Bonneville Power Administration acknowledged receipt of the letter of May 8, agreeing in substance with the statements made in plaintiff's original letter.

The final sentence in plaintiff's original letter of May 8, 1940, is as follows:

"Should there be any of the points that are not in agreement with your understanding, we wish that you would let us know within the next ten days in order that we do not proceed too far if a change is necessary."

In view of this sentence, and also in view of the fact that on May 2, 1940, plaintiff had submitted an outline drawing as required by the contract, and on May 7, 1940, the Bonneville Power Administration had approved the drawing "except as noted" and had returned it to plaintiff, we do not find that the failure to answer this letter caused plaintiff any appreciable delay.

■ Plaintiff also claimed a remission of 34 days' liquidated damages because of the alleged failure of its subcontractor, the General Electric Company, to deliver on time certain laminated tubes for the transformer windings. These tubes were ordered June 19, 1940, and plaintiff had expected to receive them within three or four weeks, and all of them not later than July 18, 1940. The first tubes were received July 11, and delivery continued one or two at a time until August 31, 1940, when the last ones were received. These tubes played an essential part in the construction of the transformers. The General Electric Company at the same time was filling some orders from the Army and the Navy, and while there was some delay to the plaintiff in the belated receipt of this material, there is no satisfactory evidence to support plaintiff's claim that it should be relieved of liquidated damages on this account. Roxford Knitting Co. v. Moore & Tierney, 2 Cir., 265 F. 177, 180.

■ The teamsters' and truck drivers' union at Newark, New Jersey, went on strike on October 1, 1940. The strike which lasted until October 20, 1940, affected plaintiff's own trucks, produced a stoppage of transportation of materials to and from plaintiff's plant, and caused such congestion in the freight yards that freight carload deliveries could not be made to plaintiff's plant railroad siding during the period of the strike.

While plaintiff did some work during this period, its whole schedule of tests and operations was interrupted and this, together with the confusion and congestion which resulted during the period of the strike and immediately following had the effect of delaying the over-all completion of the contract for a period of 20 days, as set out in finding 9. But for the plain provisions of the contract we would be inclined to allow plaintiff a recovery of liquidated damages for the full 20 days of this delay rather than the 10 days which was allowed it by the contracting officer and the head of the department. However, in view of the fact that the evidence is conflicting as to just how much plaintiff was able to do during this period, and how much actual delay was occasioned thereby, we are unable to find that the determination of the head of the department was arbitrary or unreasonable. In reference to the extension of time on account of strikes and other unforeseeable causes, the contract contains the following stipulation:

"The contracting officer shall then ascertain the facts and extent of the delay and extend the time for making delivery when in his judgment the findings of fact justify such an extension, and his findings of fact thereon shall be final and conclusive on the parties hereto, subject only to ap-

peal within 30 days, by the contractor to the head of the department concerned or his duly authorized representative, whose decision on such appeal as to the facts of delay and the extension of time for making delivery shall be final and conclusive on the parties hereto."

The above provision in the peculiar facts of this case precludes recovery on this item. B-W Construction Co. v. United States, 97 Ct.Cl. 92, 122.

■ Between June and October, 1940, there was considerable correspondence in reference to the delay in manufacture of the transformers and their failure to meet the tests. On September 19, 1940, the chief of Bonneville's Material and Inspection section visited plaintiff's plant for the express purpose of urging the necessity for prompt delivery of the transformers. He complained of the evidence of rough handling of transformer coils, scarring insulation, "poor housekeeping" and the lack of facilities generally, and of plaintiff's lack of drying equipment, and plant congestion.

On October 30, 1940, the defendant withdrew its inspector and notified plaintiff that it had terminated plaintiff's right to proceed under the contract on the ground of failure to deliver the transformers on time and failure of the transformers to meet tests and comply with the specifications. Plaintiff protested and after much discussion not here material the tests were resumed at plaintiff's plant on February 4, 1941, pursuant to a memorandum prepared by the General Counsel of Bonneville Power Administration, accepted by the plaintiff and by the Acting Secretary of the Interior. This memorandum is set out in finding 10. Several tests were made after February 4, 1941, but difficulties were encountered. Finally at the suggestion of defendant's inspector these were overcome by the use of lightning arresters. After these were installed the equipment met the tests and was approved April 12, 1941.

The plaintiff insists that its contract was cancelled on October 30, 1940, and that the defendant's right to collect liquidated damages was ended by virtue of such cancellation.

Defendant insists that the contract was not cancelled but that the defendant simply suspended plaintiff's right to proceed and that such suspension was strictly in accordance with the terms of the contract, and was fully justified by the delay on the part of the plaintiff in manufacturing and delivering electrical equipment of a kind that would meet the tests provided in the contract and within the time specified.

Plaintiff's case is apparently presented on the basis of a standard form of government construction contract. However, this is a supply contract, which contains a different provision. Article 4(a) of the contract reads as follows:

"Article 4. *Inspection.*—(a) All material and workmanship shall be subject to inspection and test at all times and places and, when practicable, during manufacture. In case any articles are found to be defective in material or workmanship, or otherwise not in conformity with the specification requirements, the Government shall have the right to reject such articles, or require their correction. Rejected articles, and/or articles requiring correction, shall be removed by and at the expense of the contractor promptly after notice so to do. If the contractor fails to promptly remove such articles and to proceed promptly with the replacement and/or correction thereof, the Government may, by contract or otherwise, replace and/or correct such articles and charge to the contractor the excess cost occasioned the Government thereby, or the Government may terminate *the right of the contractor to proceed* as provided in Article 16, 'Delays—Liquidated Damages' of this contract [See finding 11], the contractor and surety being liable for any damage to the same extent as provided for in said Article 16 for terminations thereunder." [Italics supplied.]

This provision is unusually strong in conferring on the defendant the power to suspend plaintiff's right to proceed, and permitting defendant to secure other transformers at plaintiff's cost, and at the same time assess liquidated damages against it, but the provision is as clear as the English language can make it. Plaintiff signed the contract and is therefore bound by its terms. Caravel Industries Corporation v. United States, 101 Ct.Cl. 790, 805; American Employer's Ins. Co. v. United States, 91 Ct.Cl. 231, 239.

■ The written notice which the defendant gave the plaintiff terminated the right to proceed on October 30, 1940. The right and basis of continued tests was mutually agreed to on February 1, 1941, and became effective on February 4. The head of the department remitted liquidated damages during the suspension period, that is, from October 30, 1940, to February 4,

1941. In the peculiar facts of this case the action of the Government in refusing to remit liquidated damages beyond the period of February 4, 1941, cannot be regarded as unreasonable.

The plaintiff had had many years' experience in the manufacture of electrical equipment, but had had little experience in manufacturing transformers of this size and none at all in three-phase transformers called for by the contract. Naturally it experienced some difficulty. At the time the equipment was being manufactured many concerns were engaged in the manufacture of various articles and equipment for national defense. Not only one of the subcontractors but the plaintiff itself was engaged in carrying out contracts for the Army and Navy. This extra work no doubt added to its difficulties.

Considering all the facts of the case, including plaintiff's limited experience with this particular type of equipment, the extra wartime work with its attendant manpower problems and the natural mistakes which plaintiff made in the manufacturing and testing of this equipment, the various determinations made by the defendant were reasonably fair and within the terms of the contract except for the 10 days additional delay caused by the strike of teamsters and truck drivers. For the reasons heretofore stated plaintiff is not entitled to recover on this item.

Judgment will be rendered for the defendant and the petition dismissed. It is so ordered.

WHALEY, Chief Justice, and WHITAKER and LITTLETON, Judges, concur.

MADDEN, Judge, took no part in the decision of this case.