**UNITED STATES of America,**
**Plaintiff**

v.

**MARIETTA MANUFACTURING COM-**
**PANY, Inc., and The Travelers Indem-**
**nity Company, Inc., Defendants.**

**Civ. A. No. 2173.**

United States District Court,
S. D. West Virginia,
Huntington Division.

Oct. 6, 1971.

W. Warren Upton, U. S. Atty., Charleston, W. Va., Michael Marks Cohen and Walter G. Pratt, Admiralty and Shipping Section, Dept. of Justice, Washington, D. C., for plaintiff.

Robert H. C. Kay, Kay, Casto & Chaney, Charleston, W. Va., for Marietta Manufacturing Co.

James K. Brown, Jackson, Kelly, Holt & O'Farrell, Charleston, W. Va., Charles C. Hartman, Jr., Hartman & Crain, Annapolis, Md., Kahl K. Spriggs, Spriggs, Nicholson & Myers, Washington, D. C., for Travelers Indemnity Co.

CHRISTIE, District Judge:

This action was brought by the United States against Marietta Manufacturing Company (hereinafter referred to as "Marietta"), a shipbuilder, and The Travelers Indemnity Company (hereinafter referred to as "Travelers"), surety on a performance bond executed by Marietta, for default in the construction of two hydrographic survey ships which Marietta, by contract designated No. MA–3156, agreed to build for the Maritime Administration. There are presently before the Court the following motions of the parties: (1) A motion by the defendants for summary judgment, (2) a motion by the defendants to strike plaintiff's claim for liquidated damages, and (3) a motion by plaintiff for severance and separate trial of the issues of liability and damages. The Court will first consider defendants' motion for summary judgment made pursuant to the provisions of Rule 56(b) of the Federal Rules of Civil Procedure.

## MOTION FOR SUMMARY JUDGMENT

The facts in this case have been set forth in some detail in a previous opinion issued by the Court and, for the purposes of this opinion, they need to be set forth herein only in a summary manner.[1] In November of 1962, the Maritime Administration, on behalf of the Coast and Geodetic Survey, entered into a contract with Marietta in which Marietta agreed to construct two hydrographic survey ships. The contract contemplated completion and delivery of one of the two ships by November 18, 1964, and the other by March 18, 1965.[2] On October 1, 1963, subsequent to the commencement of work on the two ships, employees of Marietta's shipyard went out on strike. This strike was not settled until February 8, 1964, and during the strike, work on the ships was completely halted. As a consequence of this strike, as well as other difficulties which Marietta was experiencing at its shipyards, work on the two ships fell behind schedule and on July 24, 1964, L. C. Hoff-

---

[1] For complete statement of the facts in this case see the Court's opinion in United States v. Marietta Manufacturing Co. and Travelers Indemnity Co., 268 F. Supp. 176 (S.D.W.Va.1967).

[2] By an addendum to the contract dated July 1, 1963, the delivery dates were extended to February 18, 1965, and April 18, 1965.

mann, Chief, Office of Ship Construction of the Maritime Administration, advised Marietta by letter that the progress of the work on the two ships was not satisfactory. Hoffmann advised Marietta to request an extension of the contract delivery dates and to submit evidence in support of the requested extensions pursuant to the provisions of their contract.[3] In the same letter, Hoffmann requested certain additional information from Marietta relative to Marietta's plans for future construction work on the ships. Included were requests for information concerning Marietta's production schedule, material control schedule, prospective subcontracts and proposed manpower during the remainder of the period required to build the ships. Hoffmann requested a reply to this letter-request within fourteen (14) days of the receipt of the letter.

Subsequently, by letter dated September 15, 1964, Hoffmann advised Marietta that, as a result of the strike at its shipyards, the Maritime Administration was allowing an additional 132 days for delivery on each of the ships, pursuant to the provisions of Article 5 of the contract. On the same day, September 15, 1964, J. W. Gulick, the then Acting Maritime Administrator, informed Marietta by letter that it (Marietta) had failed to make any appreciable progress on the construction of the two ships since July 24, 1964, and that the Maritime Administration had had no indication of any improvement in the situation. The Acting Administrator then informed Marietta that, as a consequence of the unsatisfactory progress of the work on the two ships, as well as Marietta's current financial condition and reduced labor force, he was, by that letter, giving notice of default pursuant to the provisions of Article 29 of the General Provisions of their contract. Mr. Gulick then informed Marietta that it had 15 days from the date of the receipt of the notice of

default in which to remedy the failures and conditions cited by the Administrator as constituting defaults under the contract. Marietta responded to the letter of default by forwarding a telegram to the Administrator of the Maritime Administration, dated October 2, 1964, in which it asserted that the allegations contained in the default letter of September 15, 1964, were unjustified and erroneous and further asserted that it was not in default. On October 5, 1964, Marietta requested an extension of 455 days for delivery of each of the two ships, setting forth in the request the various causes which, in its opinion, had resulted in the delays, and which entitled it to the 455-day extension. By telegram dated October 7, 1964, Nicholas Johnson, the Maritime Administrator, requested Marietta to submit additional data in order that the Administrator might have all relevant information before him prior to proceeding under either Articles 29 and 30 (the default clauses) or Article 5 (the extension clause). By letter dated October 30, 1964, Marietta advised the Maritime Administration that, in view of the fact that a representative of the Maritime Administration had acted as a full-time resident-supervisor of the construction work in the Marietta yards since 1961 and the further fact that a representative of the Coast and Geodetic Survey also had been present in the shipbuilding yards during the same period, it felt that the Maritime Administration was fully aware of the facts concerning the causes of delay in production. Based upon this fact, and the further fact that the request for additional information was made in order to enable the Maritime Administration to proceed under the default clauses of the contract, Marietta declined to furnish any further information.

On November 10, 1964, the Chief of the Office of Ship Construction advised Marietta that it had been given an ex-

---

3. Article 5 of the contract provided that the contractor was entitled to extensions due, among other things, to delay caused by a strike.

tension of 193 days for delivery of each of the two vessels. This letter also informed Marietta that the extension was a final decision of the Chief, Office of Ship Construction, and as such was subject to procedures of the Disputes Article of the contract. Marietta was further instructed in the letter that it had 30 days in which to file notice of appeal with the Chief of the Office of Ship Construction and that the Administrator of the Maritime Administration had authority to hear and determine such disputes.

Eight days after sending the letter to Marietta granting the extension of 193 days for delivery of the two vessels, the Chief of the Office of Ship Construction, by letter dated November 18, 1964, informed Marietta that he had determined that "events of default" under their contract had occurred. The events which the Chief considered to have placed Marietta in default were: (1) A failure on the part of Marietta to prosecute the contract work with such diligence and in such manner as to enable it to complete the work in accordance with the contract delivery dates, (2) Marietta's financial condition, and (3) the failure of Marietta to assign and maintain sufficient manpower to complete the work under the contract. The Chief indicated in this letter that the decision finding Marietta in default was a "final decision" and that an appeal could be made from that decision in accordance with the provisions of Article 35 of the contract. If an appeal was contemplated, Marietta was directed by the Chief to mail written notice of its appeal within 30 days. The Chief further informed Marietta that the Maritime Administrator had the authority to hear and determine such appeals. On the same day that the Chief of the Office of Ship Construction informed Marietta that he had found them in default, the Maritime Administrator, Nicholas Johnson, informed Marietta, by letter also dated November 18, 1964, that after reviewing the matter he likewise had determined that "events of default" had occurred as contemplated by the provisions of Article 35 of their contract. The events of default found by the Maritime Administrator were identical with the events listed in the previous letter from the Chief of the Office of Ship Construction. The Administrator stated that, having found Marietta in default, he was terminating the contract, under the provisions of Article 30, and directing them to deliver custody of the material under the contract to the Maritime Administration Construction Representative at the Marietta shipyards.

Various administrative proceedings were held subsequent to the date of the final decision of the Maritime Administrator, however, this Court, in its previous decision, held that the failure to permit Marietta to present evidence before, and to be heard by, the Maritime Administrator, before he acted upon and gave approval to the decision of the Chief of the Office of Ship Construction, deprived Marietta of its right to review under Article 35 of the contract. This Court further held that the deprivation of the right to review precluded the United States from relying upon the provisions of 41 U.S.C.A. Sections 321–322 (Wunderlich Act) in moving for partial summary judgment on the basis of the Administrative record. United States v. Marietta Manufacturing Co. and Travelers Indemnity Co., supra, at p. 180.

The defendants' instant motion for summary judgment is grounded upon two general propositions, viz.:

(1) That defendants are relieved of any obligation which they otherwise would have had under the contract as well as any other responsibility for damages to the plaintiff because of the plaintiff's (a) failure to comply with the requirements precedent of Articles 29 and 30 of the General Provisions of the contract requiring the giving of fifteen days prior notice to Marietta to remedy the alleged contractual failures

before finding "events of default" to have occurred and prematurely terminating the contract prior to the expiration of the fifteen-day period guaranteed to Marietta by the contract, and (b) requiring the exercise of independent judgment by the Maritime Administrator before deciding upon termination.

(2) That plaintiff breached the Disputes Clause of Article 35 of the General Provisions of the contract in that the Administrator's review and affirmance of the "events of default" finding, coincident with the termination itself, nullified Marietta's right to utilize the appeal procedures it otherwise would have had under that clause.[4] These propositions will be discussed separately.

(1) *(a) Failure to Give Fifteen Days' Notice Before Finding Events of Default and Prematurely Terminating Contract Prior to Expiration of Fifteen Day Period, and (b) Failure to Exercise Independent Judgment in Deciding upon Termination.*

■ (a) Without intending to belabor the obvious, this Court must point out first that, in ruling upon a motion for summary judgment, the facts must be viewed in the light most favorable to the party opposing the motion and the moving party has the burden of showing not only that there are no genuine issues of material fact, but also that movant is entitled to judgment as a matter of law based upon such undisputed facts. In this case, as already noted, defendants allege that they are entitled to summary judgment as a result of the alleged failure of Maritime Administration to give the 15-day remedy notice before terminating the contract as contemplated by the provisions of Articles 29 and 30 of the General Provisions of their contract. However, viewing the facts in the light most favorable to the party opposing the motion

for summary judgment, the Court must first note that J. W. Gulick, Acting Maritime Administrator, did, in fact, on September 15, 1964, notify Marietta that it was in default due to its failure to prosecute the contract work with such diligence and in such manner as would enable it to complete the work in accordance with the contract delivery dates. As contemplated by the provisions of Article 29 of the General Provisions of the contract, Mr. Gulick did inform Marietta that it had 15 days from the date of the receipt of the letter in which to remedy the conditions which the Administrator cited as having resulted in a default. Defendants have advanced several rather complex theories under which they assert that the letter of September 15, 1964, was not, and could not have been, a notice of default as contemplated by the provisions of Article 29. Whether or not these arguments are persuasive is irrelevant for the purposes of this decision. It might be argued that the letter of September 15, 1964, which, from all outward appearances would seem to be a notice of default as contemplated by Article 29, was not intended to serve as such notice. In the event that it should be determined that this letter was a notice of default, it might then be argued that conduct on the part of the government constituted a waiver of such notice. In either event, however, the decision on these issues will involve the resolution not only of questions of law, but also questions of fact, and thus precludes granting the defendants' motion for summary judgment.

(b) Defendants contend that they are entitled to dismissal on motion for summary judgment on the basis of their assertion that Nicholas Johnson, Maritime Administrator, failed to exercise independent judgment in terminating the contract. Defendants apparently have

4. For reference to a verbatim copy of Articles 29, 30 and 35 of the General Provisions of the Contract, see Appendix to this Court's prior opinion in this case, 268 F.Supp. 176, at 182 et seq.

conceded in oral argument before this Court that a dispute of material fact does exist on this issue, however, in any event, affidavits have been filed in proper form by the officers involved in the decision making process. These affidavits contain assertions which would indicate that independent judgment was exercised by the administrative officers upon termination of the contract. On the basis of such affidavits, it is apparent that a dispute of fact exists with respect to the question of whether or not independent judgment was exercised and such issue cannot be resolved on a motion for summary judgment.

(2) *Failure to Provide Adequate Notice and Hearing on Appeal as Contemplated by Disputes Clause.*

■ As noted above, this Court held in a previous opinion that the Maritime Administration failed to provide the defendant, Marietta, with an adequate opportunity to present evidence in opposition to the decision of the Chief, Office of Ship Construction, with respect to extensions under the contract and with respect to the termination of the contract. Based upon this holding, the Court found that plaintiff was not entitled to rely upon the provisions of the Wunderlich Act, 41 U.S.C.A. Sections 321–322, in moving for the partial summary judgment on the question of liability. Defendants now take the position that this failure to accord Marietta due process with respect to the administrative appeals from the decision of the Chief, Office of Ship Construction, entitles them to dismissal of plaintiff's claim on motion for summary judgment. The Court, however, does not find the logic of defendants' argument, or the cases cited by them, persuasive with respect to their contention that plaintiff's failure to afford an adequate hearing entitles them to dismissal on the merits.

Defendants cite a number of cases in support of their position, nevertheless, the Court notes that in each of the cases in which a claim for damages was denied, the decision was based upon a finding to the effect that the contract had been wrongfully terminated. As pointed out previously in this opinion, there is a dispute of fact with respect to the question of whether or not the contract in this case was wrongfully terminated. In view of the factual dispute with regard to the validity of the termination, the cases relied upon by defendants are not controlling in this case. Defendants rely heavily upon a decision of the Court of Claims in Climatic Rainwear Co., Inc. v. United States, 88 F.Supp. 415, 115 Ct. Cl. 520 (1950). In that case, however, the Court found, on the merits, that the government had in fact wrongfully terminated the contract. It is true that the Court also found that the Board of Contract Appeals had wrongfully refused to review a decision of the government assessing liquidated damages and for this reason denied the government's claim for liquidated damages as a set-off in the suit. This denial of the government's claim was based on the Court's finding that the termination was wrongful rather than upon a finding of procedural inadequacies, and, as a consequence, the *Rainwear* case is not persuasive with regard to the question of the defendants' right to summary judgment in the present case.

Defendants cite a number of other cases for the proposition that a failure on the part of the contractor to submit claims to administrative arbitration precludes suit against the United States in the Court of Claims or in the District Court. Reasoning from this proposition, defendants assert that under the facts of this case the government is now precluded from asserting its claim against the defendants in this proceeding. While the Court agrees with defendants' argument in theory, nevertheless, it must be pointed out that in the instant case the government did not deliberately by-pass administrative procedures. To the contrary, it utilized the administra-

tive proceedings to the extent of presenting evidence and making up a record in instances when the defendants were no longer contesting plaintiff's position at the administrative level. Thus, although we have held that procedural irregularities preclude the government from relying upon the findings made in the course of the administrative hearings in this case, we distinguish this situation from the situation in which a deliberate by-pass of administrative procedures has occurred. Based upon this distinction, we refuse to impose the drastic remedy of denying recovery, utilized in instances in which a deliberate by-pass of administrative procedures has occurred, and are content to remedy the admitted procedural deficiencies by denying plaintiff the right, which it would otherwise have, of relying on the provisions of the Wunderlich Act.

Our decision on this question is not without precedent. In Roberts v. United States, 357 F.2d 938, 174 Ct.Cl. 940 (1967), the Court held that procedural deficiencies on the part of the government necessitated the admission of *de novo* evidence in the trial of the action on the contractor's claim and on the government's counterclaim. The Court then proceeded to deny the government's counterclaim, however, this denial was based not on the fact that the disputes under the contract had not been adequately adjudicated by the administrative officers, but on the merits of the claims.

Although extensive research by both counsel and the Court has failed to reveal any cases in which the particular problem in this case was discussed in any detail, nevertheless, upon principles of both logic and equity, the Court is convinced that where, as in this case, defective administrative procedures preclude application of the Wunderlich Act, the procedure for the Court to follow is not that of an adjudication of the claim on motion for summary judgment, but rather to provide that the issues of fact

be heard on the merits, either by the Court or an administrative tribunal.

As pointed out in the government's brief, our holding that the government failed to accord due process in reviewing decisions under the disputes clause raises the question as to whether or not this Court, or an administrative tribunal, has primary jurisdiction to decide the issues of fact upon which the ultimate issue of liability must be based. See United States v. Anthony Grace & Sons, Inc., 384 U.S. 424, 86 S.Ct. 1539, 16 L.Ed.2d 662 (1966). However, in view of the fact that the parties have not addressed themselves to this issue, either by motion or in their briefs, this Court will not at this time rule on that particular issue.

## MOTION TO STRIKE CLAIM FOR LIQUIDATED DAMAGES

In its original complaint filed in this action, plaintiff sought damages in the amount of $1,567,194.94, being the higher costs allegedly incurred by the United States in completing the two vessels which were the subject of the contract between the Maritime Administration and Marietta. Subsequently, plaintiff was permitted to amend its complaint by adding a paragraph alleging damages for delay in the amount of $491,000. Defendants now move the Court, pursuant to the provisions of Rule 12(f) of the Federal Rules of Civil Procedure, to strike that portion of plaintiff's complaint alleging damages for delay.

Article V of the Special Provisions of the contract between the Maritime Administration and Marietta stipulates that liquidated damages for delay shall be $1,000.00 per calendar day per ship. Article 6 of the General Provisions of that contract provides that in the event the contractor fails to deliver the vessel on or before the contract delivery date, as that delivery date may be extended, the contractor shall pay "as liquidated damages, and not as a penalty, the said sum as per-day liquidated damages" for

each day of delayed delivery. This article further stipulates that the contractor shall pay the liquidated damages for each calendar day "until the delivery date of the Vessel," and that payment of such liquidated damages "shall not affect any other rights or remedies of the Administration hereunder as to matters other than date of delivery."[5] In the present case, upon termination for default, the Administration relet the contract for the two ships, pursuant to the provisions of Article 30 of the General Provisions of the contract. Article 30 provides that in the event of termination pursuant to that article, the contractor shall pay to the Administrator the amount by which the total cost to the Administration of completing the work exceeds the total contract price provided for in the contract between the Administration and Marietta. A further clause in Article 30 provides that "the rights conferred upon the Administration under the terms of this Article 30 shall be in addition to, and not in substitution of, rights which the Administration would have in either law or equity upon the happening of events of default specified herein * * *."

■ It is the position of the plaintiff that it is entitled, under the provisions of its contract with Marietta, to recover not only its excess costs as a result of reletting the contract, but also liquidated damages for delay pursuant to the provisions of Article V of the Special Provisions and Article 6 of the General Provisions of the contract. Defendants argue that by terminating the contract for default pursuant to the provisions of Article 30, plaintiff waived its right to recover liquidated damages. The question before this Court, therefore, is whether an interpretation of this contract supports the proposition that plaintiff is entitled not only to its excess costs, but also to liquidated damages for delay.

It is, of course, a settled rule in the interpretation and construction of contracts that any doubt as to proper interpretation of a contract or of the terms thereof must be resolved against the party who prepared it. United States v. Marietta Manufacturing Co., Inc., supra; Correct Piping Co., Inc. v. City of Elkins, 308 F.Supp. 431 (N.D. W.Va.1970). Having studied the various provisions, both general and special, of the contract between plaintiff and Marietta, it is the opinion of this Court that, at best, an ambiguity exists with respect to the question of whether or not liquidated damages for delay are recoverable in the event that, as here, the government terminates the contract pursuant to the default provisions and relets the work to another contractor. Clearly, in such circumstances, the United States is entitled to recover its excess costs. This is specifically provided for in Article 30. The only reference in Article 30 to the right of the government to assess liquidated damages for delay as well as excess costs is found in Subsection (d) in which it is noted that the rights conferred upon the Administrator under Article 30 shall be in addition to and not in substitution of any rights which the Administration would have either in law or in equity upon the happening of the events of default. However, as pointed out by the Court of Claims in Marley v. United States, 423 F.2d 324, 191 Ct.Cl. 205 (1970), this clause and the default termination provisions of the contract can be, and have been, construed to mean that the government reserves its right to the judicial remedy of suit for breach of contract in the event that, for some reason, it forfeits or loses its right to collect excess costs. Thus viewed, it would appear that Subsection (d) of Article 30 protects the government not by providing cumulative remedies, but by assuring it of the right to sue for breach of contract

5. See Appendix hereto for verbatim copy of Article V of the Special Provisions and Articles 5 and 6 of the General Provisions.

in the event that a suit for excess costs pursuant to the provisions of Subsection (b) is lost.

In reviewing Article 6 of the General Provisions of the contract, in which the United States is given the right to recover liquidated damages, it becomes clear that this provision was not drawn in anticipation that it would be applied in a situation in which a termination for default had occurred. Thus, Article 6 provides that liquidated damages shall be assessed for delay in delivery on or before the contract delivery date, or "as said contract delivery date may be extended pursuant to Article 5." Obviously, extensions pursuant to the provisions of Article 5 would not be applicable in a situation in which the contract had been terminated. Further, there is no provision in Article 6, or in any other section of this contract, by which to determine the length of time during which liquidated damages can fairly be assessed. Necessarily if delays were the fault of the second contractor, the original contractor should not be charged liquidated damages for such delays. In the present case, the contract provides that per-day liquidated damages shall continue until the "delivery date of the Vessel." By so providing, the clause imposing liquidated damages, upon reasonable interpretation, would seem to indicate that such damages for delay were contemplated only in the event that the original contractor completed the work on the ships, rather than in those situations where the contract is terminated and the construction completed by another contractor.

It is true, as the plaintiff contends, that the holding of the Court in United States v. American Surety Co., 322 U.S. 96, 64 S.Ct. 866, 88 L.Ed. 1158 (1944), is not applicable under the facts and circumstances of the present case inasmuch as the delay-damages clause in that case specifically provided that the government could collect delayed damages only "if the government does not terminate the right of the contractor to proceed." It is also equally clear that where the contract so provides, the government may collect both excess costs and liquidated delay damages. However, in those instances in which the government has the right to recover both excess costs and liquidated damages for delay, the right to liquidated damages has been clearly set forth in the termination clause of the contract or in the liquidated damages clause. Thus, in the American Transformer Co. v. United States, 63 F.Supp. 194, at page 201, 105 Ct.Cl. 204 (1945), the contract provided specifically that the government reserved the right to terminate the right of the contractor to proceed with deliveries as to which there had been delay and to purchase similar supplies or material in the open market, charging against the contractor any excess costs occasioned thereby, "together with liquidated damages accruing until such time as the Government may reasonably procure similar material or supplies elsewhere * * *." See also United States v. Continental Casualty Co., 210 F.Supp. 433 (S.D.N.Y.1962); Hartford Accident & Indemnity Co. v. United States, 127 F.Supp. 565, 130 Ct.Cl. 490 (1955).

The government, in the present case, did not see fit to include the provision for liquidated damages for delay in the termination clause, nor has it specifically provided in the liquidated damages clause that such liquidated damages are applicable in instances in which the contract is terminated and the work completed by another. Although the contract does specifically provide for the imposition of excess costs in the event of a termination, the imposition of liquidated damages is left to an inference allegedly arising from the fact that a subsection found in the termination clause provides that the provision for excess costs shall be in addition to, and not in substitution of, any rights which

the administration would otherwise have.

■ Though liquidated damages clauses, as such, are recognized and enforced by the courts when freely entered into by the parties to a contract, it is equally well established that such damage clauses are to be narrowly construed. Climatic Rainwear Co. v. United States, supra, 88 F.Supp. at p. 421; Tobin v. United States, 59 F.Supp. 410, 103 Ct. Cl. 480 (1945). Under the circumstances of this case, and in view of the facts that (1) specific provision is not made in the termination clause for the assessment of liquidated damages, (2) the liquidated damages clause is ambiguous and subject to the interpretation that such damages are to be imposed only in the event that the contractor is permitted to complete the contract, and (3) the existence of the rule that provisions for liquidated damages are to be narrowly construed, it is the opinion of this Court that the government, by terminating the contract with Marietta pursuant to the provisions of Article 30 forfeited its rights to claim liquidated damages pursuant to the liquidated damages clause.

■■ However, motions to strike are looked upon with disfavor and the Court will not strike a matter from the complaint unless it is clear that such matter is immaterial under any possible theory of recovery. Therefore, the Court will not, at this time, grant defendants' motion to strike since at a later date if the plaintiff fails to prevail in its efforts to recover its excess costs, it may then wish to resort to and pursue the alternative remedies reserved to it in Subsection (d) of Article 30 of the General Provisions of the contract and seek to recover damages, in law or equity, for breach of contract.

## MOTION FOR SEVERANCE
## AND SEPARATE TRIALS

■ Plaintiff has moved the Court to grant a severance with respect to the trial of the issues of liability and damages, pursuant to the provisions of Rule 42(b) of the Federal Rules of Civil Procedure, basing its motion upon the acknowledged fact that there is a very large number of issues, both factual and legal, to be decided in this case which, in the opinion of the government, could best be decided by separate trial. The Court has reviewed the affidavit and brief of plaintiff and the reply briefs of defendants and is aware of the fact that the issues to be litigated in this case do present certain difficulties because of their number and complexity, nevertheless, the Court is not convinced that two trials will serve either the convenience of the parties or the efficient administration of justice, nor is the Court convinced that trial of both the issue of liability and of damages will result in any prejudice to either plaintiff's or defendants' case. A separate trial would, however, necessitate duplication of evidence and, in the opinion of the Court, would unduly lengthen the already protracted proceedings in this case. For these reasons, the Court must deny plaintiff's motion for severance.

## SUMMARY

Having reviewed the record in this case, together with the briefs prepared by counsel for the parties, the Court finds:

(1) That there are genuine issues of material fact involved in this proceeding and for that reason, defendants' motion for summary judgment must be denied;

(2) That because, at this stage in the proceedings, it is not possible to determine the theory upon which plaintiff's claim for damages may ultimately depend, defendants' motion to strike plaintiff's claim for delayed damages is denied; and

(3) That inasmuch as plaintiff has failed to demonstrate the necessity of a separate trial of liability and dam-

ages, plaintiff's motion for severance of issues is denied.

An order will enter accordingly.

### APPENDIX

#### Special Provisions

"ARTICLE V. *Liquidated Damages.* The per calendar day liquidated damages for delay in delivery of the Vessel as provided for in Article 6 of the General Provisions are agreed to be One Thousand Dollars ($1,000.00) per ship."

#### General Provisions

"ARTICLE 5. *Extension of Time.* (a) In case of any delay caused by the Administration or by any other agency or instrumentality of the United States, or by any one or more of them, or in the case of the occurrence of any cause of delay reasonably beyond the control of the Contractor, including within such causes without limitation, Government priorities, intervention by or delays caused by civil, naval, or military authorities, acts of God (other than ordinary storms or inclement weather conditions), earthquakes, explosions, lightning, flood, fire, strikes, or other industrial disturbances, riots, insurrections, war, sabotage, vandalism, blockades, embargoes, epidemics, written notice thereof and of the anticipated effect thereof, when knowledge thereof has come to the Contractor, shall be given promptly by the Contractor to the Administration. Within twenty (20) days (or such longer period as the Administration may allow) after such cause of delay has ceased to exist, the Contractor shall furnish to the Administration a statement of the actual delay resulting from such cause.

"(b) * * *

"(c) * * *

"ARTICLE 6. *Liquidated Damages for Delay in Delivery.* In the event the Contractor fails to deliver the Vessel on or before the contract delivery date provided in the Special Provisions, as said contract delivery date may be extended pursuant to Article 5 of these General Provisions, the Administration will suffer damages which are difficult of ascertainment, so that it is agreed by the Contractor and the Administration that the sum set out in the Special Provisions as the per-day liquidated damages represents the damages to the Administration for each day of delayed delivery, and the Contractor shall pay to the Administration in discharge of its obligation to the Administration for its failure to deliver the Vessel on the contract delivery date as such date has been extended pursuant to the provisions of this contract, as liquidated damages, and not as a penalty, the said sum as per-day liquidated damages, for each calendar day or part thereof elapsing from the contract delivery date until delivery date of the Vessel. The payment of such liquidated damages shall not affect any other rights or remedies of the Administration hereunder as to matters other than the date of delivery. Such liquidated damages shall not be considered as an allowable item of cost in the determination of profit under the provisions of Article 15 of these General Provisions."