**MAKI, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 288–85C.**

United States Claims Court.

Dec. 9, 1987.

As Amended Jan. 13, 1988.

James P. Youngberg, pro se, for plaintiff.

Stuart James, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant.

## OPINION

ANDEWELT, Judge.

In this action, plaintiff charges the Department of the Navy with breach of a contract under which plaintiff was to construct a facility for keeping dogs used in drug detection work. The action is presently before this Court on cross-motions for summary judgment. Plaintiff seeks judgment in the amount of $472,857; defendant does not contest $3,744.33 of plaintiff's claim, but disputes the remainder. For the reasons explained herein, plaintiff is granted summary judgment only to the extent of its uncontested claim for $3,744.33, and defendant's cross-motion is granted as to the remainder of plaintiff's claim.

### Facts

The contract in issue, Contract No. N62472–83–C–5840, was awarded to Maki by the Department of the Navy on September 30, 1983. The contract called for Maki to build a dog facility according to a specified design and to complete construction by January 13, 1984. The contract price was $27,330.

Maki received notice to proceed with performance of the contract on November 4,

1983. On November 9, 1983, the Navy issued a requirement that all military working dog kennel facilities be approved by the Chief of Naval Operations. In a letter dated November 16, 1983, the Navy informed Maki that "[a] change in criteria for the construction of [the contract] facilities has been made ... we will notify you as soon as possible after a determination of the required changes, if any, that must be incorporated into your contract." Maki was told in the letter "to refrain from accomplishing any work or procuring any materials for [the] referenced contract until you receive further authority...."

Approximately five months later, in a letter dated April 23, 1984, the Navy provided Maki with a set of revised design specifications for the dog facility, and requested that Maki submit a bid proposal for "the inclusion under the subject contract" of the revised specifications. In its response dated April 28, 1984, Maki did not submit a new bid, but instead submitted a certified claim for delay damages under paragraph 17(b) of the contract. That paragraph provides:

> If the performance of ... the work is, for any unreasonable period of time, suspended, delayed or interrupted by an act of the Contracting Officer in the administration of this contract, or by his failure to act within the time specified in this contract (or if no time is specified within a reasonable time), an adjustment shall be made for any increase in the cost of performance of this contract (excluding profit) necessarily caused by such unreasonable suspension, delay or interruption and the contract modified in writing accordingly.

In its certified claim, Maki sought $2,932 to cover certain expenditures arising prior to November 8, 1983, a "contractor fee" of $800 per day from November 8, 1983, until the date the claim was settled, and "liquidated damages" of $1,575 per day from September 30, 1984, until the date the claim was settled. Maki claimed that the Navy had unreasonably delayed its submission of the revised specifications, and that Maki could not offer "a responsible bid" for construction of the dog facility under the revised specifications until its certified claim for delay damages was resolved.

Maki subsequently met with Navy personnel to discuss the contract and, by letter dated May 10, 1984, submitted a $58,343 bid for construction of the dog facility according to the revised specifications. The Navy responded in a May 22, 1984, letter that Maki's bid was "excessive" in that it called for 56% inflation in eight months for what amounted to only 75% of the original work. The letter went on to state: "Considering your price, this office is considering terminating the contract for convenience. Please submit your proposal for your expenditures on the enclosed forms, in order that we may negotiate a fair and equitable settlement."

By letter dated May 30, 1984, Maki submitted the requested expenditure proposal. In its breakdown estimate of direct costs, Maki sought a total of $551,232. This figure included a "contractor fee" of $164,000 ($800 per day for the 205-day period from November 8, 1983, to May 30, 1984) and "damages" of $384,300 ($1,575 per day for the 244-day period from September 30, 1983, to May 30, 1984).

The Navy forwarded Maki's proposal for expenditures to the Defense Contract Audit Agency ("DCAA") for verification. After conducting an audit, the DCAA auditor, in a November 2, 1984, report, stated:

> Maki has no books or records to support any of the cost claimed by Mr. Youngberg [Maki's individual owner] ... The records only support several minor expenditures made by Maki ... The contractor furnished us with invoices from Chesley & Cline insurance brokers, but refused to provide us with proof of payment (cancelled checks) ... Finally, the value of the basic contract was under $60,000. Therefore, the inclusion of a contractor's fee of $164,000 and liquidated damage request of $284,800 is almost fraudulent.

The auditor concluded that Maki substantiated only $790 of the $551,232 Maki claimed.

By letter dated November 14, 1984, the Government terminated the contract for its convenience. In the November 14, 1984, termination letter, Maki was advised that its certified claim would be considered its termination claim unless Maki advised the Government differently. On January 12, 1985, Maki informed the Government that it took exception to its claim being considered a termination claim. Maki did not, however, submit a different termination claim. On March 13, 1985, the contracting officer rendered a final decision with respect to Maki's certified claim, finding that, for work performed, Maki was entitled to $3,744.33, including its direct costs, home office overhead, and interest.

On May 15, 1985, Maki filed its complaint with this Court, seeking review of the contracting officer's decision, and damages in the amount of $472,857, due as of April 28, 1984.

### Discussion

A grant of summary judgment is appropriate only where there is no genuine issue of material fact (*i.e.*, a fact that might affect the outcome of the suit) and the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986). See *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed.Cir.1987). The moving party bears the burden of establishing the absence of any genuine issue of material fact. That burden may be discharged by pointing out to the Court that there is an absence of evidence to support the non-moving party's case, *i.e.*, an absence of evidence as to a material fact on which the non-movant bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). When the moving party successfully discharges its burden in this way, to defeat the summary judgment motion, the non-movant must present sufficient evidence as to the existence of that fact so that the trier of fact could reasonably find in favor of the non-movant. See *Liberty Lobby*, 106 S.Ct. at 2512. The Federal Circuit has delineated the non-moving party's burden in this respect as follows:

> The non-movant may not rest on its conclusory pleadings but, under Rule 56, must set out, usually in an affidavit by one with knowledge of specific facts, what specific evidence could be offered at trial. *Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*, 731 F.2d 831, 836, 221 USPQ 561, 564 (Fed. Cir.1984).

*Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.*, 833 F.2d 1560, 1562-63 (Fed. Cir.1987) (quoting *Pure Gold, Inc. v. Syntex (U.S.A.), Inc.*, 739 F.2d 624, 626-27 (Fed.Cir.1984)).

### A. Plaintiff's Motion for Summary Judgment

Plaintiff's motion for summary judgment is based on the Navy's admitted failure to satisfy its obligations under paragraph 6(e) of the contract, which, in pertinent part, provides:

6. DISPUTES (1980 JUN)

> (e) ... For contractor-certified claims in excess of $50,000, the Contracting Officer must decide the claim within 60 days or notify the Contractor of the date when the decision will be made.

Maki contends that because the contracting officer failed to make the required decision or to provide the required notification within 60 days of Maki's April 28, 1984, certified claim, the Navy is in "default" under the contract, *i.e.*, the Navy can no longer contest the damages due, and must pay the full amount requested in the certified claim. Maki's argument, however, is based on a misunderstanding of the contract terms and the applicable law.

A contractor seeking damages for unreasonable delay by the Government has the burden of establishing its damages with reasonable accuracy, and the Government is free to dispute the damages alleged. *Wunderlich Contracting Co. v. United States*, 173 Ct.Cl. 180, 199, 351 F.2d 956, 968 (1965); *Roberts v. United States*, 174 Ct.Cl. 940, 946, 357 F.2d 938, 949 (1966); *G.M. Shupe, Inc. v. United States*, 5 Cl.Ct. 662, 737 (1984). There is nothing in the contract or the controlling statutes

that suggests a different rule should apply to Maki.

■ Indeed, Maki's contract specifically provides that all disputes under the contract are to be resolved pursuant to the Contract Disputes Act of 1978, Pub.L. No. 95–563, 92 Stat. 2383 (41 U.S.C. § 601, *et seq.*).[1] That Act, in pertinent part, provides:

> Any failure by the contracting officer to issue a decision on a contract claim within the period required will be deemed to be a decision by the contracting officer denying the claim and will authorize the commencement of the appeal [before the Contract Board of Appeals] or suit [in the United States Claims Court]. . . .

41 U.S.C. § 605(c)(5). Thus, rather than providing that the contractor is entitled to the entirety of its certified claim, the controlling statute, which is specifically referenced in the contract, merely provides that the claim will be deemed denied and that the contractor can, through appeal or suit, contest that denial. Once such an appeal or suit is instituted, the United States is permitted to contest a contractor's entitlement to the damages sought. Accordingly, plaintiff's motion for summary judgment based on its "default" theory is denied. Plaintiff is entitled to judgment only for $3,744.33, plus interest, which defendant does not contest.

### B. *Defendant's Cross-motion for Summary Judgment*

■ Defendant's cross-moves for summary judgment on the ground that the facts and attachments Maki submitted with its complaint, the sole information Maki indicated in its pretrial submission it would present at trial, are insufficient as a matter of law to support a claim for damages in excess of $3,744.33.[2] Defendant is correct. Plaintiff has not established any factual or legal basis for the additional damages it seeks in the form of "liquidated damages" and a "contractor fee."

#### 1. *Claim for Liquidated Damages*

Maki's April 28, 1987, certified claim indicates that the $1,575 per day in liquidated damages was calculated as follows (emphasis added):

> *Liquidated damages determined by contract:* $15 per day × (times) length of contract (105) one hundred and five days from 30 Sept. 83 calendar days to day Dept. Navy settles my company's claim.

But a review of the contract reveals absolutely no basis for a claim by Maki for liquidated damages. The contract contains a specific provision covering liquidated damages, but that provision makes liquidated damages available only to the Navy, not to Maki.[3] There is no other provision in the contract and nothing in the "facts and attachments submitted in Maki's complaint" that provide any possible basis for implying an obligation on the part of the Government to pay liquidated damages. See *Tobin v. United States*, 103 Ct.Cl. 480, 493, 59 F.Supp. 410 (1945).

#### 2. *Claim for a Contractor Fee*

Maki provides even less information with respect to its claim for a "contractor fee"

---

**1.** The "Disputes" section of the contract, at Section 6, provides:
> (a) This contract is subject to the Contract Disputes Act of 1978 (P.L. 95–563).
> (b) *Except as provided in the Act,* all disputes arising under or relating to this contract shall be resolved in accordance with this clause.

(Emphasis added.)

**2.** Maki's pretrial submission was submitted in response to the Court's pretrial order of August 20, 1985, which obligated the parties to identify the documents and witnesses that they intend to present at trial. Maki's pretrial submission indicates that it will "rely on facts and attach-

ments submitted in its complaint" and that it "plans no witnesses at this time."

**3.** General paragraph 6 of Section 01011 of the contract provides:
> LIQUIDATED DAMAGES: In case of failure on the part of the Contractor to complete the work within the time fixed in the Contract or extensions thereof, the Contractor shall pay to the Government as liquidated damages for the work remaining incomplete at the close of business on that day, pursuant to Clause: "Termination for Default–Damages for Delay–Time Extension" of the General Provisions, the sum of $15.00 for each day of delay.

of $800 per day. As explained above, Maki seeks this fee under paragraph 17(b) of the contract, which grants the contractor an adjustment in the case of unreasonable delay, "for any increase in the cost of performance of this contract (excluding profit)...." But there is nothing in the "facts and attachments in the complaint" that suggests how Maki calculated a fee of $800 per day or how this fee in any way relates to any "increase in the cost of performance of the contract."

The only explanation of the basis for the "contractor fee" claim in the documents submitted by the parties is a February 12, 1985, memorandum submitted by the Government which recounts, from the Government's perspective, negotiations between Mr. Youngberg, president of Maki, and Navy officials. According to that document, Mr. Youngberg analogized the contractor's fee to a lawyer's or doctor's fee and contended that Maki was entitled to a contractor's fee because it could not bid on other jobs during the period of suspension because of "loss of bidding capacity."[4]

In seeking damages for "loss of bidding capacity," Maki appears to be claiming the profits that it otherwise could have earned had it not been prevented by the Government's suspension from bidding on other contracts. But paragraph 17(b) of the contract expressly excludes claims for lost "profit." *Holloway Construction Co. v. United States*, 4 Cl.Ct. 779, 789 (1984). In any event, in breach of contract cases where the contractor alleged that an unreasonable delay by the Government led to financial difficulties or impaired the contractor's overall business, the courts have denied such damages on the ground that they were consequential, remote, and speculative, and, hence, not recoverable. See *Ramsey v. United States*, 121 Ct.Cl. 426, 433, 101 F.Supp. 353 (1952); *Myerle v. United States*, 33 Ct.Cl. 1, 27 (1898); *Ardini & Pfau, Inc.*, ASBCA No. 8602, 64 B.C.A. 4237.

### 3. *Maki Has Had Ample Opportunity to Substantiate Its Claim*

Maki is represented *pro se* by its owner, Mr. James P. Youngberg, and the Court was concerned that Mr. Youngberg may not have understood the legal consequences of its actions during the course of the litigation. Consequently, at oral argument, the Court explained that, if limited to the record presently before it, which did not provide any factual or legal basis for plaintiff's claims for liquidated damages and a contractor fee, the Court likely would deny plaintiff's motion for summary judgment, and grant defendant's cross-motion. The Court informed Mr. Youngberg that Maki would be provided one additional opportunity to provide such a basis for its claim. In an order dated September 18, 1987, the Court authorized plaintiff to supplement its opposition to defendant's cross-motion, stating:

> The addendum should not contain merely broad allegations of damage. Plaintiff should, if possible, substantiate the claims through affidavits and documents that explain the factual basis for plaintiff's claim that it suffered damages of $472,857.

Plaintiff filed an addendum, but it did not provide any additional facts tending to substantiate plaintiff's damage claim.

Both during its negotiations with the Navy and before this Court, plaintiff has either refused or has not been able to substantiate its claim. Defendant has pointed to the resulting absence of factual evidence in support of plaintiff's damage claim and thereby has met its initial burden on summary judgment to demonstrate the absence of any issue of material fact. See *Celotex*, 106 S.Ct. at 2554. The burden, therefore, shifted to plaintiff to demonstrate the existence of a genuine issue of material fact. See *Liberty Lobby*, 106 S.Ct. at 2512. Plaintiff has not met this burden; it has not provided facts that would permit a finding by the trier of fact that it is entitled to

---

**4.** At oral argument, Mr. Youngberg further explained his "loss of bidding capacity." He asserted that he "had a bond for say, roughly $40,000, which had $100,000 of [his] equity tied up for better than 14 months ..." and that he "couldn't do a thing without the government releasing the bond [he] gave them...."

any damages in excess of those that are uncontested by defendant.

### Conclusion

For the foregoing reasons, plaintiff is granted summary judgment only to the extent of its uncontested claim for $3,744.33. Defendant's cross-motion is granted as to the remainder of plaintiff's claim. Judgment shall accordingly be entered for plaintiff in the amount of $3,744.33, plus interest thereon pursuant to 41 U.S.C. § 611, computed from April 28, 1984. Each party shall bear its own costs.